(No. 30577.—

GEORGE E. TOVEY *et al.*, Appellees, *vs.* HYMAN L. LEVY *et al.*, Appellants.

*Opinion filed November 18, 1948.*

LORING B. MOORE, and SIDNEY P. BROWN, both of Chicago, for appellants.

RATHJE, KULP, SABEL & SULLIVAN, and FRANKLIN J. STRANSKY, (JOSEPH J. SULLIVAN, JR., of counsel,) all of Chicago, for appellees.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

February 21, 1945, appellees George E. Tovey, Mamie P. Tovey, May Minton, Robert H. Beaumont, Mae Beaumont, Arthur Hansen and Mary G. Hansen filed their amended complaint in the superior court of Cook County against Hyman L. Levy and Christene J. Levy, his wife, Cadillac Hotel Corporation, an Illinois corporation, Joseph J. Allen *et al.,* seeking a writ of injunction to restrain them, and any other persons claiming by, through or under them, from leasing to or permitting the occupancy by any negro or negroes of the premises therein described, referred to herein as parcel 5, and from permitting the acquisition of any interest therein by any negro or negroes in contravention of the covenants, conditions and provisions of the agreement therein sued upon. The amended complaint also prayed that a decree be entered declaring null and void any and all contracts, leases, deeds or sales of said premises, or any portion thereof, to or by any negro or negroes in contravention of the covenants, conditions and provisions of said agreement, and for the removal and eviction of any negro or negroes who shall occupy said premises or any

portion thereof in violation of said agreement, either prior or subsequent to the filing of the complaint.

The agreement referred to in the complaint was one entered into May 25, 1928, by the owners and persons interested in approximately 64 parcels of real estate within an area bounded on the north by West Sixtieth Street, on the south by West Sixty-first Street, on the east by Stewart Avenue and on the west by Normal Boulevard, all in the city of Chicago, Cook County, Illinois, including the owners of the premises referred to as parcel 5. The agreement provided that none of the parties thereto would sell, give, convey or lease to any negro or negroes or permit the occupancy of any portion of the therein described property owned by them by any negro or negroes (excepting the occupancy thereof by negro janitors, chauffeurs, or house servants actually employed as such for services in and about the premises as occupied by them as aforesaid) prior to January 1, 1949. The agreement further provided that it shall be binding upon and for the benefit of and may be enforced by and against each party thereto, his successors and assigns, and the heirs, executors, administrators and successors of them, respectively. The agreement further provided that it should be of no force or effect unless signed by the owners of 75 per cent of the frontage of said tracts, and recorded in the office of the recorder of deeds of Cook County, Illinois, on or before March 31, 1929.

The amended complaint alleged the due execution and recording of said agreement and that it became and was in effect; that parcel 5 comprised lots 9 and 10 in Gunn's subdivision and was commonly known as 417-421 West Sixtieth Street, Chicago, Illinois, and was improved with a three-story brick building containing many apartments and rooms for occupancy by lessees and tenants; that on September 16, 1944, the owners of said parcel 5 conveyed the same by deed of that date to the appellants Hyman L.

Levy and Christene J. Levy, his wife, expressly subject to the restrictions as contained in said agreement; that thereafter said Levy and wife executed a deed purporting to convey the same premises to the appellant Cadillac Hotel Corporation, an Illinois corporation; that said hotel corporation immediately thereafter leased the premises (parcel 5) to the appellant Joseph J. Allen, who is a negro, and that Allen has leased or subleased and has permitted the occupancy of said premises, or a portion thereof, by other negroes, the other appellants herein, none of whom occupied the premises as a janitor, chauffeur or servant, etc. The amended complaint alleged that the leasing to and occupancy by a negro or negroes is a breach and violation of the covenants, conditions and provisions contained in the agreement and tends to depreciate the value of complainants' property and to cause them irreparable loss and injury.

The prayer was for injunction to restrain the leasing to, or permitting the occupancy by, negroes, of the said premises or any portion thereof, and from permitting the acquisition of any interest therein by any negro in contravention of the covenants of the aforesaid agreement, and further that all contracts, leases, deeds or sales concerning said premises or any portion thereof to or by any negro be declared void as in contravention of the covenants of said agreement, and further that any and all negroes be evicted from the premises.

After motions to dismiss had been overruled, appellants answered the amended complaint as amended, denying that the said agreement was executed by 75 per cent of the owners of the frontage of the premises covered by the agreement; attacked the capacity and authority of some of the signers; denied that the agreement had been properly executed, acknowledged and delivered and that it was an instrument entitled to be recorded; that the instrument recorded consisted of separate documents bound together

and not one instrument; that all persons interested were not made parties, and alleged that said agreement never became operative or effective because of the failure of compliance with the conditions precedent and terms provided therein for it to become operative and effective.

The answer refers to that part of the agreement defining the term "negro" as including every person having one-eighth or more of negro blood, or any appreciable admixture of negro blood, and every person who is what is commonly known as a colored person, and says that the definition is ambiguous, indefinite, equivocal, unscientific and without legal certainty.

The answer avers that by reason of the ownership and lawful and peaceful occupancy of said parcel 5 the appellants have a vested right therein and have a Federal right and privilege to own, hold and possess the same under sections 1977-1978 of the Revised United States Statutes (U. S. Code Annotated, Title 8, secs. 41, 42,) and that by virtue of said Federal laws and of section 1 of the fourteenth amendment of the Federal constitution, and by virtue of the common law of the State of Illinois, they may not be divested of their said rights and privileges without violating said statutes and constitutional provisions and the due-process clause of the Illinois constitution and the laws of the State of Illinois; that they are citizens of the United States and have the aforementioned fundamental property rights by virtue of their national citizenship under said fourteenth amendment and under said Federal constitution, and that they may not be divested of their said fundamental property rights by the action of the court's judgment or decree, and that the enforcement of the said restrictions by the court would violate their constitutional rights.

Many other matters of defense are alleged in the answer but the above are the principal ones and all that will be necessary to mention here. A reply was filed denying new matters set up in the answer. The cause was referred

to a master in chancery whose report was favorable to the appellees and a decree was recommended in substance as prayed. After objections to the master's report were overruled, exceptions in substance the same as the objections were argued in the superior court and likewise overruled.

The decree was entered November 28, 1947, and restrained Cadillac Hotel Corporation, its servants, agents, successors and assigns and all persons claiming through, by or under them, from leasing to, and permitting the occupancy of said parcel 5 by, any negro or negroes. It also enjoined and restrained the appellant, Joseph J. Allen, found to be a negro, his servants, agents, successors and assigns and all person claiming through, by or under him from leasing to and permitting the occupancy of the said premises by any negro or negroes. It also enjoined and restrained other appellants from leasing to, and permitting the occupancy of the said premises by, any negro or negroes. The decree ordered the said occupants, negroes, to forthwith vacate the said premises and ordered that a writ of assistance issue upon the expiration of thirty days from its date for the eviction of said occupants and ordered that the appellants pay all the costs. The decree expressly held "that the enforcement of the agreement involved herein prohibiting the use or occupancy of property by a designated race does not violate any State or Federal constitutional provision, or any civil rights statutes." The appeal comes directly to this court for the reason that a construction of the constitutions is involved.

July 15, 1948, appellees moved this court to dismiss the appeal on the grounds that since the entry of the decree all questions raised by the brief and argument of appellants have become moot because the lease of the premises in question by the Hotel Corporation to Allen was cancelled and terminated in April, 1948; that Allen surrendered possession of the premises to the corporation; that all persons claiming under Allen and the sublessees, including the

appellants, have vacated said premises and are not in possession thereof and that the said premises are now being offered by said Hotel Corporation to non-negro tenants. Objections were filed to this motion denying the facts and conclusions therein set forth. We took the motion with the case and must now dispose of it.

It is contended by appellees that all questions which in any manner affect appellants have become moot and such that the court is not called upon to determine. Appellees overlook the permanent injunction against the Hotel Corporation, Joseph J. Allen and the other appellants, and those claiming through, by and under them, restraining it and them from leasing to and permitting the occupancy of the premises by any negro or negroes. Even though the leases in force when the suit was begun have been surrendered so that the decree no longer affects them, it does, nevertheless, prevent those having the right to lease or sublease the premises from making new leases with negroes and prevents the negro appellants from occupying the premises at any time after the entry of the decree, even under another or new lease. The validity of that decree is attacked by this appeal. Some of the questions involved are not moot, and the motion to dismiss the cause is accordingly denied.

It is argued by appellees that there is no constitutional question here involved and that this court therefore has no jurisdiction of the appeal. As above indicated, the answer challenged the right of the State court to enforce the restrictions in the contract and averred that the enforcement of said restrictions by the court would violate their constitutional rights. The court passed upon their constitutional rights in that connection when it said that the enforcement of the agreement does not violate any State or Federal constitution or any civil rights statute. Appellees, in their motion to dismiss the appeal state that the brief and argument of appellants presents three points or con-

tentions as grounds for reversal, one of them being "The courts of Illinois are prohibited by the Fourteenth Amendment to the Constitution of the United States from enforcing against said Defendants-Appellants the agreement herein sued upon restraining the ownership, use and occupancy of its property on the basis of race and color." It would seem that this particular constitutional question was definitely presented and relied upon in the lower court; that it was passed upon by that court and is before us now for decision. We therefore have jurisdiction of this appeal. The decision of that constitutional question will determine whether the decree in question shall stand or fall. It will not be necessary to consider the many other points raised by the parties.

The point we are deciding is whether or not the granting of the injunction by the superior court constituted State action which is prohibited by the equal-rights-protection clause of the fourteenth amendment to the United States constitution. This question must not be confused with those concerning the validity of the restrictive covenants involved and the rights of persons to enter into contracts having for their purpose the restricting of certain classes or races from given territory. The fourteenth amendment erects no shield against merely private conduct, however discriminatory or wrongful. The restrictive agreements in themselves do not violate any rights granted by the fourteenth amendment. So long as the purposes of such agreements are effected by voluntary adherence to their terms there has been no action by the State and the provisions of the said amendment have not been violated. (*Corrigan* v. *Buckley,* 271 U. S. 323, 70 L. ed. 969, 46 S. Ct. 521; *Shelley* v. *Kraemer,* 334 U. S. 1, 68 S. Ct. 836, 92 L. ed. 845.) That amendment is directed against discriminatory State action.

Whether or not the said fourteenth amendment was violated by State action raises a Federal question and

where the Supreme Court of the United States has passed directly upon the question .we are bound by its decision. That court, so far as we are able to ascertain, has always held that where by State action discrimination against citizens is enforced, this contravenes the fourteenth amendment aforesaid. Ordinances having for their purpose racial restriction have been held void under said amendment in a number of cases. (*Buchanan* v. *Warley,* 245 U. S. 60; *Harmon* v. *Tyler,* 273 U. S. 668.) Not before the *Shelley* v. *Kraemer case,* however, did the United States Supreme Court hold that the enforcement by a State court of a contract between private persons containing racial restrictions was action taken by the State and in contravention of said fourteenth amendment to the constitution.

In the *Shelley case,* consolidated with *McGhee* v. *Sipes,* 334 U. S. 1, 68 S. Ct. 836, 92 L. ed. 845, they pass squarely upon that question and say: "We have no doubt that there has been State action in these cases in the full and complete sense of the phrase. * * * We hold that in granting judicial enforcement of the restrictive agreements in these cases, the States have denied petitioners the equal protection. of the laws and that, therefore, the action of the State courts cannot stand. We have noted that freedom from discrimination by the States in the enjoyment of property rights was among the basic objectives sought to be effectuated by the framers of the Fourteenth Amendment. That such discrimination has occurred in these cases is clear. Because of the race or color of these petitioners they have been denied rights of ownership or occupancy enjoyed as a matter of course by other citizens of different race or color." In those cases the restrictive covenants contained in the agreements involved were quite similar to those in the present case.

The *Shelley case* arose in Missouri and the restrictive covenant involved was against the occupancy as owners or tenants of any portion of the property there described for

residence or other purposes by people of the negro or Mongolian races. In the *McGhee case*, which arose in Michigan and was considered with the *Shelley case*, the restrictive provision in question was "This property shall not be used or occupied by any person or persons except those of the Caucasion race." Both the Missouri and Michigan courts held in substance that the enforcement of the restrictive provisions violated no rights guaranteed under the Federal constitution. A number of State courts have aided in the enforcement of racial restrictive covenants and agreements and have held that the enforcement did not constitute State action. These authorities are all now swept aside by the recent holdings of the United States Supreme Court cited above.

Appellees contend that the hotel corporation is estopped to attack the restrictive covenants here involved on any ground which would affect its validity or enforcement, and that it waived any constitutional right it might have had by accepting the deed to the property from its predecessor in title having constructive knowledge of the existence of said racial restrictive covenants in the deed to its predecessor in title. We need not pass on those questions except to say there is nothing in the record indicating an estoppel or a waiver of the constitutional provision concerning equal rights of citizens which appellants claim was violated through the court's action in an attempt to enforce the racial restrictions.

In our opinion the decree of the lower court attempting to enforce the discriminatory racial covenant of the agreement in question constituted State action which is prohibited by the equal-rights clause of the fourteenth amendment of the United States constitution. Its decree is therefore reversed.

*Decree reversed.*