Ludwig Amschler et al., Appellees, v. Frank Remijasz et al., Defendants. Kathryn A. Garrette et al., Appellants.

Gen. No. 45,013.

Heard in the second division of this court for the first district at the February term, 1950. ▉▉▉ Opinion filed June 13, 1950. Released for publication June 26, 1950.

HENRY C. FERGUSON, of Chicago, for appellants.

RATHJE, KULP, SABEL & SULLIVAN, of Chicago, for appellees; JOSEPH J. SULLIVAN, JR., of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

In July 1944, Frank Remijasz, owner of an apartment building at 6136 South Bishop street, Chicago, entered into a so-called restrictive covenant agreement with certain other property owners in a square-block area providing that neither they nor their successors

or assigns would sell, convey or lease to or permit the occupancy of their property by any negro or negroes prior to December 31, 1960. In November 1947, Remijasz sold the premises to Kathryn A. Garrette, who conveyed them to Harold C. Alexander; both Kathryn A. Garrette and Harold C. Alexander were negroes. Immediately following the sale, Remijasz intended to move from the premises and yield occupancy of his apartment to Alexander, but on November 8, 1947, the plaintiffs, Ludwig Amschler and Johanna Amschler, owners of property at 6139 South Laflin street, and Paul F. Ehler, owner of property at 6131 South Laflin street, all of whom, like Remijasz, had entered into the restrictive covenant agreement, filed a complaint in the superior court seeking to restrain defendants Garrette and Alexander from selling or leasing the premises to any negro or negroes, and to enjoin Alexander from occupying said premises until further order of the court. An injunction issued as prayed. Thereafter, on December 1, 1947, Garrette and Alexander moved to dissolve the injunction on the ground that it had been issued without notice. The chancellor overruled the motion, from which order no appeal was taken, but instead defendants had leave to and did, on March 31, 1948, file their answer, averring in substance that the restrictive covenant entered into between the property owners in that block was against public policy, null and void, and in violation of the constitutions of the United States and the State of Illinois.

At the time the temporary injunction was issued, judicial enforcement of racial restrictive covenants was held to be lawful under the decisions of the United States Supreme Court, the United States Circuit Court of Appeals, and of substantially all state courts of review whenever and wherever the question was presented for determination. *Corrigan v. Buckley,* 271

U. S. 323; *Mays v. Burgess,* 147 F. 2d 869 (certiorari denied 325 U. S. 868, 89 L. Ed. 1987 petition for rehearing denied 325 U. S. 896, 89 L. Ed. 2006); *Burke v. Kleiman,* 277 Ill. App. 519; and many other cases cited in plaintiffs' brief. However, on May 3, 1948, in the consolidated cases of *Shelley v. Kraemer* and *McGhee v. Sipes,* 334 U. S. 1, the United States Supreme Court reinterpreted the law, departed from its former concepts as to judicial enforcement of racial restrictive covenants, and overturned all previous contrary decisions of courts of review. The recent Illinois case of *Tovey v. Levy,* 401 Ill. 393 (Nov. 1948), discusses the holding in the *Shelley* opinion.

██ By the decision in those consolidated cases the United States Supreme Court made racial restrictive covenants unenforceable by judicial action; consequently the case at bar became moot; and nothing remained to be done by the chancellor except to dismiss the complaint. Accordingly, on May 24, 1948, plaintiffs made a motion to that effect. On the same day defendants moved for dissolution of the injunction and presented their suggestion of damages. The motion to dissolve was overruled; plaintiffs' motion to dismiss the suit was allowed; and the court reserved jurisdiction for the sole purpose of assessing damages, hearing of which was continued generally. Subsequently, on March 15, 1949, pursuant to notice, plaintiffs moved to strike the suggestion of damages, "for the reason that the temporary injunction heretofore issued in this cause has not been dissolved but the suit has been dismissed on motion of the plaintiffs as a direct result of the recent decision of the United States Supreme Court." After some delay, the court on May 24, 1949, sustained the motion, and ordered that the suggestion of damages be stricken and dismissed. Defendants Garrette and Alexander appeal from that order.

In *R. M. C. Corp. v. Genco, Inc.*, 330 Ill. App. 192, we held that "the only authority for the assessment of damages upon the dissolution of an injunction is Section 12 of the Injunction Act [Ill. Rev. Stat. 1949, ch. 69, par. 12; Jones Ill. Stats. Ann. 109.360]," and cited the early case of *Elder v. Sabin,* 66 Ill. 126, wherein the court said that "the statute only allows the assessment of damages sustained by reason of improperly suing out the injunction, and the damages must be confined alone to that ground." Defendants take the position that the voluntary dismissal of the complaint by plaintiffs amounts to a dissolution of the temporary injunction and a confession that it was wrongfully issued. This contention begs the every question in issue. In every court of review where the matter was theretofore considered, racial restrictive covenants had been sustained on constitutional grounds, the state courts relying for their interpretation upon the United States Supreme Court decision in *Corrigan v. Buckley,* 271 U. S. 323. That was the settled rule of law when application was made for the temporary restraining order, and the chancellor who entered the order had no alternative under such rule except to issue the injunction. However, following the decision in *Shelley v. Kraemer,* all the former decisions were overturned, and it would have been futile for plaintiffs to continue with the case; they could not have prevailed upon trial of the proceeding, and would ultimately have had their complaint dismissed. Therefore, the law then being as it was, the court had no recourse except to enter the injunction. It was rightfully issued under the existing rule of law. We think it was never contemplated that the assessment of damages should be allowed in that situation. It was held in *Nestor Johnson Mfg. Co. v. Goldblatt,* 371 Ill. 570, that section 12 of the Injunction Act (Ill. Rev. Stat. 1949, ch. 69 [Jones Ill. Stats. Ann.

266

109.360]) providing for suggestion of damages was evidently intended to provide relief against the wrongful issuance of an injunction; that the question whether or not the temporary injunction there sought was rightfully issued was settled by the prior Appellate Court decision (265 Ill. App. 188) to that effect and thereupon became the law of the case; and that when the second motion to dissolve the temporary injunction was denied and no review of that order was sought, the order became final. In the case at bar the court's order denying defendants' second motion to dissolve the injunction became final by reason of their failure to appeal, and thus the question whether or not the injunction was rightfully issued had already been adjudicated. No useful purpose would have been served in going to trial after the United States Supreme Court decision was filed; all the parties realized the futility of proceeding with the case. Nothing remained except the dismissal of the complaint for want of equity, and that in effect was accomplished by granting plaintiffs' motion to dismiss the suit.

In the early case of *Moriarity v. Galt,* 125 Ill. 417, a temporary injunction was made perpetual on the trial of the case. The Appellate Court affirmed the decree, but its judgment was thereafter reversed by the Supreme Court and the cause was remanded to the Appellate Court with directions to reverse the decree of the circuit court and to remand the cause for further proceedings. This was done, and after the case was redocketed in the circuit court defendant entered a motion to dissolve the injunction in accordance with the mandate of the Appellate Court, whereupon the injunction was dissolved and a suggestion of damages was filed. The master recommended an allowance for the value of all services in procuring a dissolution of the injunction. However, the trial court held that no damages were assessable, and its decree was affirmed

by the Appellate Court and the Supreme Court, which said: "The entering of a motion, as was done, after the cause was sent down from the Appellate Court, to dissolve the injunction, was the doing of a useless thing. The mandate directed the circuit court to proceed in conformity with the views expressed in the opinion of the Supreme Court, and that was equivalent to a direction to dismiss the bill. When that should be done the injunction would cease to control, without any specific order of dissolution."

■ *Nestor Johnson Mfg. Co. v. Goldblatt,* 371 Ill. 570, and *Moriarity v. Galt,* 125 Ill. 417, are both in point. We hold that since the temporary injunction was not wrongfully sued out, under the particular facts and circumstances of this case, but was rightfully issued under the then prevailing law, the chancellor's denial of defendants' motion for recovery of damages was proper, and the order is therefore affirmed.

*Order affirmed.*

SCANLAN and SCHWARTZ, JJ., concur.