PAUL C. DOOLEY, Doing Business as DOOLEY PROVISION COMPANY, Appellant, *v.* THOMAS ANTON, Individually and as Secretary of Food Stores Local No. 34, Affiliated with Amalgamated Meat Cutters, Butchers and Allied Market Employees of AFL, et al., Respondents.

Fourth Department, June 30, 1961.

*Tesseyman, Hartman & Bentley* (*Donald D. Bentley* of counsel), for appellant.

*Lipsitz, Green, Fahringer & Fleming* (*Eugene W. Salisbury* of counsel), for respondents.

Bastow, J. This appeal presents the question of the right of defendants to seek damages claimed to have been sustained by reason of a temporary injunction restraining them from picketing at plaintiff's place of business. As a condition of granting the temporary restraint plaintiff was required to and did cause a surety company bond in the sum of $6,000 to be executed and filed. Following a trial a permanent injunction was granted. We affirmed the order granting the temporary injunction and the judgment affording permanent relief. (7 A D 2d 880.)

Subsequently, the Court of Appeals granted leave to appeal. (6 N Y 2d 706.) Following argument the court ordered reargument. (8 N Y 2d 748.) Thereafter, the judgment was reversed and the complaint dismissed. (8 N Y 2d 91.) In its opinion the court reviewed its prior decision in *Pleasant Val. Packing Co.* v. *Talarico* (5 N Y 2d 40) and stated (p. 95) that therein it was

held " that recognitional picketing by a stranger union designed to coerce an employer to commit an unlawful act * * * was neither protected nor prohibited activity under the [National Labor Relations] Act, and hence the State courts were free to assume jurisdiction." The court then reviewed subsequent decisions including *San Diego Unions* v. *Garmon* (359 U. S. 236); *Labor Bd.* v. *Drivers Local Union* (*Curtis Bros.*) (362 U. S. 274) and its own decision in *Columbia Broadcasting System* v. *McDonough* (6 N Y 2d 962). It was concluded (p. 98) that " under the *Garmon* doctrine, it is the [National Labor Relations] Board, not the State courts, which has exclusive primary jurisdiction to resolve the issue." Finally it was said (p. 98) that " a compelling reason for reversing the judgment below is that the Landrum-Griffin Amendments to the National Labor Relations Act * * * which went into effect on November 13, 1959, have effectively rendered moot the issue of State jurisdiction here involved." The ultimate determination was stated as follows (p. 98): " Since it is now arguably within the compass of the Board's jurisdiction to enjoin the picketing here involved, the *permanent* injunction granted below obviously cannot stand " (emphasis in original). It should be noted that the court in passing wrote (p. 96) that " The *Garmon* decision had not yet been rendered at the time the lower courts decided this case, and hence they understandably asserted jurisdiction under the *Pleasant Valley* decision."

The bond given herein provided that defendants should be entitled to their damages by reason of the temporary injunction " if the Court shall finally decide " that the plaintiff was not entitled thereto. (Cf. Civ. Prac. Act, § 893.) Defendants contend that such a decision has been made and the complaint dismissed. Plaintiff argues that damages are not recoverable because there has been no final decision that he was not entitled to the temporary injunction at the time it was granted. Otherwise stated, it is contended that the complaint was dismissed upon a holding that although temporary and permanent restraint were properly granted the permanent injunction was dissolved because of a subsequent change in decisional and statutory laws.

The temporary injunction granted herein in August, 1958 was a provisional remedy available in instances falling within the provisions of sections 877 and 878 of the Civil Practice Act.*

---

\* We do not understand that defendants claim that this action involved a " labor dispute " within the meaning of section 876-a of the Civil Practice Act. Therefore, it is unnecessary to consider the provision in subdivision 3 of that section that the undertaking shall constitute an agreement on the part of the plaintiff and the surety upon which judgment may be entered.

The undertaking provided that plaintiff would pay defendants such damages as they might sustain by reason of the temporary restraint. The action was tried and judgment for a permanent injunction granted in November, 1958. Thereupon the temporary injunction ended (*Jackson* v. *Bunnell*, 113 N. Y. 216, 220). The defendants' rights under the undertaking continued, however, dependent upon the final outcome of the action.

The general rule is that "Findings and judgment in favor of the defendant, after hearing the cause on the merits, constitute, ordinarily, a final decision that plaintiff was not entitled to an injunction pendente lite * * *. A judgment merely for defendant does not necessarily have this effect: it must be one qualifying as res judicata against the asserted injunction demand. However, a judgment dismissing the complaint usually has these qualifications and entitles the defendant to recourse against the temporary injunction undertaking." (10 Carmody-Wait, New York Practice, § 125, p. 778.)

In our opinion all of the requirements have been met to entitle defendants to an assessment of damages. It has been said that such an undertaking "strikes a balance between thrusting on plaintiffs a 'crushing and indeterminate liability' for innocent mistake and settling the harm caused by an erroneous decree on the party who should bear it. It is, in effect, the price for unsuccessful resort to the unusual anticipatory remedies of equity." (Recovery for Erroneous Injunctions, 73 Harv. L. Rev. 333, 336.) It is recognized that no person has a vested interest in any rule of law entitling him to have the rule remain unaltered (*Preston Co.* v. *Funkhouser*, 261 N. Y. 140, 144) but "the policy in favor of granting judicial changes in the law retrospective effect in order to treat equally parties who litigate the issue before and after the court's decision is not countered, in a case in which the litigation has not yet been concluded, by the policy of finality which prevents reopening judgments." (73 Harv. L. Rev., *supra*, p. 343.)

The parties found no authority in point. A decision, however, somewhat analogous to the instant case is *Amschler* v. *Remijasz* (341 Ill. App. 262). Therein plaintiffs obtained a temporary injunction restraining the conveyance of realty to a Negro in violation of a restrictive covenant. At that time judicial enforcement of racial restrictive covenants was held to be lawful by the United States Supreme Court and the State courts. Subsequently, however, *Shelley* v. *Kraemer* (334 U. S. 1) was decided. Therein it was held that such covenants were unenforcible. As a result the *Amschler* action became moot "and nothing remained to be done by the chancellor except to dismiss

the complaint" (p. 265). It was held there could be no recovery for damages since the temporary injunction was rightfully issued under the then prevailing law.

This decision has been discussed with others on kindred subjects. (73 Harv. L. Rev., *supra*, p. 333.) Therein it was said (pp. 342–343): "Since litigation is ordinarily time-consuming, the extraordinary remedy given the plaintiff by the issue of an interlocutory injunction should be conditional on the ultimate decision in the case. Had the plaintiff in the *Amschler* case waited, as other litigants must, for the usual course of trial, he would have been entitled to no remedy whatsoever. Gratuitously permitting him anticipatory relief at the expense of the defendant seems erroneous."

It is unnecessary to explore at length the basic difference between the Illinois statute (Ill. Rev. Stats., 1953, ch. 69, § 12) and our statute (Civ. Prac. Act, § 893) and particularly the rule that under the former the "suggestion of damages" must be filed before the suit is finally disposed of (*Liberty Nat. Bank of Chicago* v. *Newberry*, 6 Ill. App. 2d 252). Assuming, however, that no such difference is present, we are not inclined to follow the decision in the *Amschler* case.

It has been written that "A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. * * * On the other hand, it may hold to the ancient dogma that the law declared by its courts had a Platonic or ideal existence before the act of declaration, in which event the discredited declaration will be viewed as if it had never been, and the reconsidered declaration as law from the beginning. * * * The alternative is the same whether the subject of the new decision is common law * * * or statute. * * * The choice for any state may be determined by the juristic philosophy of the judges of her courts, their conceptions of law, its origin and nature." (CARDOZO, J., *Great Northern Ry.* v. *Sunburst Co.*, 287 U. S. 358, 364, 365.) (See, also, Hall, Selected Writings of Benjamin Cardozo, pp. 34–36.)

We conclude that the temporary injunction rested upon no firmer a foundation than the permanent injunction. It was finally decided that the State court lacked jurisdiction to grant the latter relief. It follows that in the language of the undertaking it was "finally decided" that plaintiff was not entitled to the temporary restraint. Therefore, defendants are entitled to an assessment of their damages.

The order should be affirmed.

McClusky, J. (dissenting).  I dissent and vote to reverse the order below and to dismiss the application to appoint a Referee to ascertain damages by reason of a temporary injunction granted August 1, 1958.  The action was commenced to restrain the defendants and their unions from picketing the plaintiff's place of business to coerce him into the recognition of a different union from the one with which the employer had a valid contract.

The plaintiff took the position that the defendants violated the law and that the State was not pre-empted from that field. The condition of the bond was that the surety undertook to pay the defendants such damages not exceeding $6,000 " as they or it may sustain by reason of the temporary injunction, if the Court shall finally decide that the Plaintiff is not entitled thereto; such damages to be ascertained by a reference or otherwise as the Court may direct."

Thereafter the trial of the action was held and the injunction made permanent.  Our court affirmed the appeal from the judgment and the order.  (7 A D 2d 880.)  Permission was subsequently granted to appeal to the Court of Appeals.  After the appeal was argued, a reargument was directed upon two issues, viz., (1) the effect of the decision of the Supreme Court of the United States in *Labor Bd.* v. *Drivers Local Union* (362 U. S. 274) on the issue of States' jurisdiction to enjoin the picketing here involved and (2) the impact of new paragraph (7) of subdivision (b) of section 8 of the National Labor Relations Act (73 U. S. Stat. 519 *et seq.*; U. S. Code, tit. 29, § 158, subd. [b], par. [7]) upon the present controversy, including the issue of mootness.  After deliberating upon the additional questions, the Court of Appeals held that " the *permanent* injunction granted [8 N Y 2d 91, 98] below obviously cannot stand."  It did not specifically hold that the temporary injunction was invalid.

The question presented here is whether the denial of the " permanent " injunction was a determination that the temporary injunction was improper when issued or whether it was proper when issued but had become academic by reason of the pre-emption of the field in controversy by the Federal Government by both statute and decisional law. The Court of Appeals in the instant case emphasized the effect of " pre-emption " not only in the prevailing opinion but especially in the concurring opinion.  (8 N Y 2d 91.)

The general principle of law is that, if a plaintiff discontinues the action for an injunction it is equivalent to a holding that he is not entitled to the preliminary injunction.  (*Methodist Churches of N. Y.* v. *Baker,* 18 N. Y. 463.)  But if the

dismissal results from matters arising subsequent to the commencement of the action, which in no way involves the merits of the action, it does not follow that the plaintiff was not entitled to the preliminary injunction. (*Williams* v. *Montgomery,* 148 N. Y. 519; *Apollinaris Co.* v. *Venable,* 136 N. Y. 46; *Palmer* v. *Foley,* 71 N. Y. 106; *Hathorn* v. *Natural Carbonic Gas Co.,* 163 App. Div. 768.)

But in the case before us, the field which had been open to the State (cf. *Pleasant Val.* v. *Talarico,* 5 N Y 2d 40) at the time of the commencement of the action, had been pre-empted by the Federal Government before the final decision by the Court of Appeals. There was no direct determination by a State court that the temporary injunction had been improperly issued. Indeed under the circumstances herein it was immaterial whether it was issued properly or not, for after pre-emption the State courts no longer had jurisdiction. The permanent injunction was denied not because of merit intrinsic to the cause but because of matters extrinsic to the original issue and in a sense independent of it.

There is a further reason for denying the union in the instant case a recovery. Such a recovery would be tantamount to paying a premium to a party who asserts as his defense and uses as an offensive weapon his violation of law. There is no question but that the recognitional picketing herein sought to be barred is barred under the Landrum-Griffin amendments to the National Labor Relations Act.

All concur, except McClusky, J., who dissents and votes for reversal in a separate opinion. Present — Williams, P. J., Bastow, Goldman, McClusky and Henry, JJ.

Order affirmed, with $25 costs and disbursements.