MARY ELDER *et al.*

*v.*

WILLIAM SABIN *et al.*

1. RESCISSION *of executed contract—must be done in a reasonable time after discovery of fraud.* On bill in chancery to rescind the purchase of a house and lot, which had been executed by a conveyance, and the giving of notes and mortgage on the premises for the unpaid purchase money, on the ground that the vendor, at the time of the sale, represented that there were in existence papers guaranteeing the right to use water from a well on the adjoining lot, and providing that whenever the owner of the lot sold would sink a well on such lot, the former owner of both lots would furnish the stone to wall the same, and that the vendor would get such papers and give them to the purchaser, which representations were not true; it appeared that the purchase was made about the first day of October, 1869, and completed in a week or ten days thereafter, by the

payment of $2000, the delivery of the deed, and the execution of notes and mortgage for $2100, the balance of the price, and the taking of possession; that in May, 1870, the owner of the adjacent lot refused the privilege of getting water from his well; that the purchaser then offered to rescind, when the vendor offered to dig the well, if possession was given for that purpose; and that on June 14th, 1870, the purchaser tendered the vendor a deed for the premises and $200 for rent, and demanded a return of the money paid and the notes and mortgage, and on refusal filed his bill to rescind: *Held*, that the facts were sufficient to justify a rescission, if the contract had not been executed; but that the purchaser having received the deed, gone into possession without taking steps to secure the use of water from the well on the adjoining lot, and held the property for about seven months, the application came too late to set aside the sale, and have the notes and mortgage cancelled, for a misrepresentation of the kind, which was not regarded of sufficient importance to justify a rescission after such a delay.

2. SAME—*misrepresentations must relate to material facts.* When fraud exists sufficient to rescind an executed contract, it should relate to the thing sold, and should be essential to its enjoyment. Where the representations made in the sale of a house and lot was the right to use water from a well on an adjacent lot, there being no well on that sold, and the proof showed that one could be sunk on the lot sold in a short space of time, for a sum of money that was not very large: *Held*, that after a delay of seven months by the purchaser before offering to rescind, the failure of the vendor to make good his representations in this respect, was not of a such material character as to require a rescission of the contract.

3. INJUNCTION—*of collection of purchase money, for fraud.* Where the grantor of a house and lot falsely represented to the grantee at the time of his purchase, that there were papers in existence, guaranteeing to the owners of such lot the privilege of using water from a well on an adjoining lot, and agreed to get them for the purchaser, and it appeared that the grantor had assigned the notes given for the unpaid price without consideration to cut off the maker's defense: *Held*, on bill by the grantee to rescind for fraud, and to enjoin the collection of these notes, that while a rescission could not be had, the court should have enjoined the collection of so much of the notes as would equal the full cost of sinking a well on the lot sold.

4. SAME—*measure of damages on dissolution.* In a suit in chancery by the purchaser of property to rescind the purchase, and to enjoin the collection of the notes given for the unpaid purchase money in the hands of an assignee under a colorable assignment: *Held*, upon dissolution of the temporary injunction, that the assessment of damages must be confined to those sustained by reason of improperly suing out the writ; that a charge for solicitor's fees could only extend to the motion to dissolve the

injunction, and that it was error to allow the entire expense incurred in the preparation and trial of the cause as damages.

5. SAME—*sufficiency of proof to sustain damages allowed for solicitor's fee on dissolution.* Where, on the dissolution of an injunction granted on a bill for the rescission of a contract of purchase, the damages assessed were within a few dollars of the amount which the solicitor who tried the cause swore it was worth to try the cause on its merits, but there was no proof that he charged that sum for trying the whole case, or that such sum had been agreed to be paid him: *Held,* that the damages allowed were not supported by the evidence.

APPEAL from the Court of Common Pleas of the city of Aurora; the Hon. RICHARD G. MONTONY, Judge, presiding.

The material facts of the case are stated in the opinion. After the hearing of the cause the court below dissolved the temporary injunction granted. Upon suggestion of damages for attorney's fees and expenses, the court assessed the damages at $200 attorney's fees, and $36 expenses.

Mr. S. W. BROWN, for the appellants.

Messrs. WHEATON, SMITH & McDOLE, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a suit in equity, brought by appellants in the court of common pleas of the city of Aurora, against appellee, for the purpose of rescinding the purchase of a house and lot in that city. It is alleged that Sabin, at the time of the sale, represented that there were in existence papers guaranteeing the right to use water from a well on an adjoining lot to that sold to appellants, and that he would get the papers and place them in the hands of appellants. And that he further represented the papers provided that whenever the owner of the lot sold to them should sink a well on the lot, the former owner of both lots would furnish the stone necessary to wall and complete such well. The bill charges that there was no such contract or papers, and that Sabin knew they did not exist, or that he fraudulently made the representation without

any knowledge on the subject; that the stone for the well had been furnished to Sabin, which filled and terminated any contract that may have existed in relation thereto.

From an examination of the evidence we think it sustains the truth of the allegations. And had the contract remained unexecuted, or had this proceeding been instituted in a reasonable time, the complainants would have been entitled to the relief asked in the bill.

It is true, that the notes and mortgage given to secure the deferred payments on the purchase, were transferred before they were due, but all of the evidence considered in relation to the assignment, we think that it was not for value, and only to prevent a defense. We shall therefore consider the case as though Sabin was still the holder of these securities.

It appears that about the first of October, 1869, complainants and Sabin met at the office of Town and closed the trade, complainants paying $500 on the purchase, with the understanding that when they should in a few days pay the balance of a cash payment of two thousand dollars to the elder Town, and give their notes for $2100, secured by mortgage on the premises, then Town was to deliver to them the deed for the property. A week or ten days afterwards the remaining $1500 of the cash payment was made to Town, the notes and mortgage delivered, and complainants received the deed for the house and lot, and went into possession. Subsequently they ceased to occupy it themselves, and rented it to tenants, who occupied it until about May, 1870, when the tenants, being refused the privilege of getting water on the adjoining lot, refused to pay rent. Complainants thereupon offered to rescind the contract upon receiving back the $2000 paid on the property, and their notes and mortgage, and to pay rent for the time it was occupied, but Sabin declined, and offered to dig a well if they would give him possession for the purpose, but this they declined. Afterwards, on the 14th of June, 1870, they tendered him a deed for the premises and two hundred dollars for rent, and demanded a return of the purchase

9—66TH ILL.

money and the notes and mortgage, but Sabin declined to do so, and complainants then filed this bill.

Having received the deed and gone into possession without taking the necessary steps to secure the use of water from the well on the adjoining lot, and having held the property for about seven months, it must be held that the application comes too late to have the sale set aside, and the deed, notes and mortgage canceled. The misrepresentation was not of that important character that requires an executed contract, acquiesced in for such a length of time, to be set aside. When Sabin went out to get the papers, and did not return, their suspicions should have been aroused that he could not produce them, and living, as complainants did, on the lot, and obtaining water from the adjoining lot, had they regarded a want of a well of such vital importance to the property, it is strange that they, in view of the fact that Sabin had not produced the papers, did not inquire of the owner of the well on the adjoining lot whether there was existing such an agreement as Sabin had represented. They must have known they had but to make the inquiry and have obtained the information. Such delay and want of promptness on their part are, in the opinion of a majority of the court, strong evidence of a waiver of that part of the agreement, or, at least, as showing insufficient grounds to rescind the contract.

But conceding it was not, in the opinion of a majority of the court the failure to make good the promise of Sabin is not of such a material character as requires a rescission. Where fraud exists sufficient to rescind a contract, it should relate to the thing sold, and should be essential to its enjoyment. The evidence shows that a well can be sunk on the lot for a sum of money that is not large, and which could be sunk in a short time. But equity and good conscience require that Sabin should not be permitted to collect, nor should his assignee collect, the full sum due on these notes, and the full amount of the cost of sinking a well should have been enjoined. This

Sabin regarded as just and obligatory on him, as he offered to sink a well on the lot. In this the decree was wrong.

Again, the damages allowed for wrongfully suing out the injunction were too large, and can not be supported by the evidence. The statute only allows the assessment of damages sustained by reason of improperly suing out the injunction, and the damages must be confined alone to that ground. The charge for lawyer's fees could only extend to the motion to dissolve the injunction. Had no injunction been granted, and this bill had progressed to a hearing as it did, we imagine no one would have conceived the idea that damages could be claimed on a dismissal of the bill, and simply because the damage contemplated by the statute had not been sustained. Then why allow as damages the expense of trying the cause. There would be no more reason for doing so in the one case than in the other. The evidence on the motion to assess damages goes to the entire expense of trying the case, and the court seems to have allowed them on the evidence The amount allowed is within a few dollars of the amount the solicitor who tried the case swore it was worth to try the case on the merits. We can see that the amount is certainly large, very large simply for a solicitor's fee, for obtaining a dissolution of the injunction. There seems to be no evidence in the record as to the value of such services. The solicitor trying the case does not swear that he had charged that sum, even for trying the whole cause, or that appellees had agreed to pay that sum.

For the errors indicated the decree of the court below is reversed and the cause remanded.

*Decree reversed.*