F. J. Weddige Company, Inc., Plaintiff-Appellant, v. Pabst Sales Company, and A. A. Konitzer, Defendants-Appellees.

Gen. No. 10,615.

Opinion filed September 30, 1952. Rehearing denied January 19, 1953. Released for publication January 19, 1953.

SEARS & STREIT, of Aurora, for appellant; EDWARD F. STREIT, and PAUL W. SCHNAKE, both of Aurora, of counsel.

REID & OCHSENSCHLAGER, of Aurora, for appellees; LAMBERT M. OCHSENSCHLAGER, FRANK R. REID, JR., WILLIAM C. MURPHY, and ROBERT B. HUPP, all of Aurora, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

On October 21, 1948 Pabst Sales Company, a Delaware corporation, and therein referred to as "Pabst" and F. J. Weddige Company, an Illinois corporation, therein referred to as "distributor" entered into a written agreement which recited that Pabst was engaged in the business of selling Pabst beer and ale manufactured by Pabst Brewing Company and that Pabst desired to allot to distributor a certain territory and grant to distributor the right to sell Pabst beer and ale and by said instrument did grant unto the distributor the right to sell Pabst Blue Ribbon beer and ale to retailers or retail customers located in a described territory which included all of Kendall county and portions of Kane, De Kalb, Du Page and La Salle counties and the distributor agreed that it, as such distributor of Pabst products, would purchase from Pabst all products necessary to supply and satisfy the needs of distributors' customers and that the distributor would not purchase, sell or deal in any other beer or ale. The agreement then obligated Pabst not to ship any beer or ale to any person, firm or corporation for resale or use in said territory other than to distributor nor authorize any person, firm or corporation to ship or consign any beer or ale to any person, firm or corporation for resale or use in any place within the described territory, other than to the distributor prior to mailing, or otherwise sending or delivering, notice of intention to terminate said agreement, or receiving such notice from the distributor as provided in said agreement.

3

This agreement then provided that the distributor should maintain a place of business, warehouses, and adequate distribution facilities to properly service the customers of the distributor and carry an adequate stock of Pabst beer and ale to supply its trade, and then continued:

"9. Either party may terminate this agreement at any time by sending to the other party a written notice of such intention at least three days prior to the date of such proposed termination, such notice to be sent either by telegraph, mail, or by other means of delivery. Immediately upon sending notice of termination by Pabst, or upon receipt by Pabst of such notice given by the distributor, Pabst may ship or deliver, or any distributor designated by Pabst may ship or deliver, beer and ale to any firm, person or corporation it desires in said territory. Any termination of this agreement shall, at the election of Pabst, operate as a cancellation of all orders for beer or ale which may have been placed with Pabst by distributor, whether, or not the beer or ale so ordered has been shipped prior to receipt of notice of such termination but shall in no way extinguish any indebtedness or liability or obligation of the distributor to Pabst.

"10. Upon the termination of this agreement Pabst shall, if lawfully authorized so to do, repurchase from the distributor and the distributor shall, if lawfully authorized so to do, sell to Pabst, all of the beer and ale purchased by distributor from Pabst and then on hand and in good condition in possession of the distributor, at the net price paid for same by distributor to Pabst, plus actual transportation charges paid by the distributor thereon, and plus any state tax actually paid by the distributor thereon, and plus the amount of the deposit, if any, paid by distributor to Pabst on the barrels, kegs, cases, or bottles containing such beer

4

or ale; or, if directed so to do by Pabst, the distributor shall sell such beer and ale at said price to any other distributor who may be designated by Pabst. In either event, whether such beer and ale is repurchased by Pabst or sold by distributor to another distributor designated by Pabst as herein provided, payment therefor may be made, at the election of Pabst, by credit to distributor's account to the extent of any balance that may be owed by distributor to Pabst. Upon the termination of this agreement the distributor shall immediately either return to Pabst, or deliver to another distributor designated by Pabst, as Pabst shall elect, any and all empty barrels, kegs, cases and bottles, received by distributor hereunder, and Pabst shall concurrently, at its election, either refund to the distributor or credit to his account the aggregate amount of any and all deposits made by the distributor to Pabst with respect thereto.

"11. It is agreed that the rights of the distributor hereunder shall be personal to the distributor only, and shall not be assignable or transferable by the distributor, and that this agreement shall not be construed in any way to constitute the distributor an agent for Pabst for any purpose whatsoever, and the distributor, in selling, purchasing, or distributing said beer or ale shall be engaged in its own independent and entirely separate business.

"12. This agreement supersedes all previous agreements between the parties hereto relating to the purchase, sale and distribution of said beer and ale. The parties agree that this agreement embodies all the terms, agreements and understandings between the parties hereto. It is further agreed that neither this contract nor any of the terms thereof may be changed or modified except in writing duly approved and signed by a proper corporate officer of Pabst, and that no

5

agent of Pabst, except a proper corporate officer thereof, has any authority to contract for Pabst or bind Pabst upon any contract whatsoever.''

On October 26, 1951 Pabst, acting by and through its executive vice-president, dispatched, by registered mail to the distributor the following letter: ''This is to advise you that the agreement between us dated October 21, 1948, is hereby terminated, effective November 3, 1951. We regret that circumstances have made it necessary to change our distributing arrangements in your territory.'' This letter was duly received by the distributor on October 29, 1951.

On November 20, 1951 the distributor filed its verified complaint in the circuit court of Kane county. This complaint is voluminous and consists of sixty-six typewritten pages of the record. Among other things it alleged that in 1930, F. J. Weddige was engaged in a well and successfully established food-distributing business and at the solicitation of Pabst began the sale and distribution of Pabst Blue Label Malt and Near Beer, and thereafter began the sale and distribution of Pabst Blue Ribbon beer and ale and continued as such distributor until 1948 at which time the F. J. Weddige Company, Inc. was organized as a corporation and succeeded to all the rights, title and business interest of said F. J. Weddige, who was the majority stockholder and president of said corporation and that the wholesale sale and distribution of Pabst Blue Ribbon beer and ale has been carried on pursuant to successive written agreements, the most recent of which was the said agreement of the corporation and Pabst dated October 21, 1948.

The complaint then alleged that the successful establishment and operation of a beer-distributing business required constant effort, good salesmanship and the expenditure of much effort and money in sales promotion

6

and equipment; that plaintiff did all this and purchased and equipped a warehouse with expensive refrigerating equipment and motor equipment for the purpose of transporting supplies and making deliveries and employed a competent staff of employees, such as salesmen, truck drivers and warehouse and office employees and that the capital investment of the plaintiff at the time the complaint was filed exceeded $100,000.

The complaint also alleged that in 1933, F. J. Weddige was engaged in the wholesale sale and distribution of whiskey and other alcoholic liquors in substantially the same territory described in the agreement of October 21, 1948 and successfully carried on said business until 1948 when at the request of Pabst he discontinued the same in order to conform in all respects to the policies established by Pabst; that upon divers occasions since 1933 the representatives of Pabst represented to F. J. Weddige that "he could keep said distributorship as long as he lived and did a good job" or "as long as he desired, provided he did a good job" and that "he would be a Pabst distributor as long as he looked after the business" and that "he had no worry because of his good record"; that after the incorporation of the plaintiff substantially similar representations were made and also that plaintiff could retain the distributorship "as long as he (Weddige) lived and was connected with the company." It was then alleged that the policies of Pabst, the promotional efforts of F. J. Weddige and of the plaintiff, the introduction of the representatives and employees of Pabst to the customers of the plaintiff and the disclosure of confidential business information to the representative of Pabst had the effect of creating a valuable good will for Pabst and for Pabst beers and ales and placed Pabst in a position to seize and take over the business of plaintiff; that plaintiff relied upon the representa-

7

tions of the representatives of Pabst and upon the good faith and honesty of Pabst; that it had done a good job and had a good record as shown by the fact that out of 228 retail outlets for beer and ale in its territory, plaintiff had 225 customer accounts, all of which were obtained through the efforts of F. J. Weddige and the plaintiff; that in 1947 the gross sales of F. J. Weddige amounted to $414,828.35; that in 1948 Weddige and the plaintiff had gross sales amounting to $375,812.54; that in 1949 plaintiff had gross sales of $282,085.02; that in 1950 plaintiff had gross sales of $257,814.59 and for the first nine months of 1951 plaintiff had gross sales of $217,535.15, upon all of which gross sales plaintiff realized a substantial stated profit. The complaint then alleged that this business of supplying and selling, at wholesale, the customers of the plaintiff, with beer and ale and the good will incident to said business is a valuable property right built up over a period of 18 years which is now the property of the plaintiff.

The complaint then alleged that one of Pabst's employees for several years prior to the latter part of 1950 had been one A. A. Konitzer; that Konitzer had been field representative of Pabst in the territory assigned to the distributor and as such field representative had exercised supervisory authority and control over the operations of the distributor and had acquired knowledge and information with respect to the business operations of the plaintiff, its salesmen and customers; that prior to October 26, 1951 Konitzer, in furtherance of a scheme and plan to seize and appropriate the business of the plaintiff commenced efforts to replace plaintiff, as distributor, and acquire for himself the assignment of authorized distributor for Pabst and attempted to undermine and did succeed in undermining plaintiff's position and standing with Pabst and conspired with certain officials and employees of

8

Pabst to bring about the termination of plaintiff's assignment as distributor and induce Pabst to terminate plaintiff as such authorized distributor and appoint him, Konitzer, as such distributor; that Konitzer, in furtherance of said plan has induced two of plaintiff's employees to leave the employ of plaintiff and enter the employ of Konitzer and has sought to induce others to do so; that Pabst appointed Konitzer its authorized distributor effective November 5, 1951 and has furnished him with supplies and is permitting Konitzer to sell and distribute Pabst products in the same territory plaintiff had theretofore been the distributor; that Pabst would continue so to do unless enjoined by this court; that Konitzer has notified all of plaintiff's customers by letter dated November 1, 1951 that starting on November 5, 1951 he, Konitzer would serve them as distributor for Pabst products; that since November 3, 1951 Pabst has refused to deliver its products to the plaintiff or accept orders therefor and has sent three representatives into the territory in its attempt to induce plaintiff's customers to transfer their patronage to Konitzer and has supplied Konitzer with Pabst export beer which is in great demand but which was not made available by Pabst to the plaintiff.

The complaint makes Pabst Sales Company and Konitzer, defendants and charges that the effect of the conduct of Pabst and Konitzer is to deprive plaintiff of its business and permit Konitzer to seize and appropriate that business for his own use and profit. The complaint prays that a temporary injunction issue without notice and without bond enjoining Pabst from soliciting or attempting to persuade or induce customers supplied by the plaintiff in the described territory to transfer their patronage as retail beer dealers of Pabst beers and ales to any person, firm or corporation

9

other than the plaintiff; from selling or delivering Pabst beers and ales to anyone other than the plaintiff as the authorized distributor of Pabst or from selling or permitting the sale of Pabst beers and ales to any retail beer dealers except through the sale and distribution thereof by the plaintiff; that upon a hearing a perpetual injunction issue against both defendants and that the plaintiff have a money judgment against them for $150,000. Copy of the contract of October 21, 1948, the letter of October 26, 1951 from Pabst to the plaintiff, terminating the contract, the letter of Konitzer to the customers in the territory which the plaintiff had served, announcing that he was the distributor of Pabst products effective November 5, 1951 and a card to the effect that he was a Pabst product distributor were attached to the complaint and made a part thereof.

Upon filing the complaint a preliminary injunction was issued directed to Pabst Sales Company, its officers, agents, servants and employees, restraining it and them from soliciting in any manner or attempting to persuade or induce the customers theretofore supplied by the plaintiff in the described territory to transfer or give their patronage as retail beer dealers of Pabst Blue Ribbon beers and ale to anyone other than the plaintiff; from selling or delivering Pabst Blue Ribbon beers or ale to anyone other than the plaintiff as authorized distributor for Pabst in the described territory; from selling or delivering or permitting the sale or delivery of Pabst Blue Ribbon beers or ale to retail dealers theretofore supplied by plaintiff within the described territory for resale at retail by said customers by any means whatsoever except through the sale and distribution thereof by the plaintiff, until the further order of the court. This writ was duly served on the defendants the following day and

10

on November 27 the defendants filed their motion to dissolve the same which was heard and on November 29, 1951 an order was entered dissolving the preliminary injunction and continuing the cause for preparation and presentation of a written order to that effect.

The record shows that on November 27, 1951 four affidavits were filed in support of the complaint to the effect that Konitzer, as field representative of Pabst, had acquired from salesmen in the employ of the distributor or from officials of the plaintiff, information relating to the identity and location of the customers of the plaintiff and the types and volume of Pabst products which they purchased from the plaintiff; that Konitzer, since he became distributor for Pabst has in his employ two salesmen who had formerly been in the employ of the plaintiff and had sought to employ others. The record further shows that after the order had been entered dissolving the preliminary injunction an order was entered, on motion of the plaintiff, amending the complaint, by striking therefrom the prayer thereof seeking to recover money damages.

Thereafter and on December 7, 1951 the plaintiff filed an instrument which recited the allowance of defendants' motion to dissolve the preliminary injunction and the amendment to the complaint and then continued: "plaintiff represents to the court that it elects to stand on the allegations contained in the complaint heretofore filed herein as amended and suffer dismissal of said complaint as amended for want of equity." Accompanying this election was a motion which recited this election and the further fact that the court had theretofore failed to dismiss the complaint as amended for want of equity on its own motion and this motion then continued: "plaintiff moves the court to dismiss the complaint herein." The defendants had filed their suggestion of damages alleging, among other things,

11

that Pabst Sales Company had become liable to pay $3,000 for its reasonable solicitor fees in and about procuring the dissolution of the preliminary injunction and praying for an early hearing and that damages be assessed against the plaintiff, pursuant to the statute. Upon this suggestion of damages and upon the motion of the plaintiff to dismiss a hearing was had resulting in two orders entered on January 21, 1952. One order fixed the damages of the defendants at $3,000 and rendered a money judgment against the plaintiff for that amount. The other order recited that the court refused to dismiss the complaint as amended for want of equity on its own motion and this order then continued: "and plaintiff having moved to dismiss its complaint herein as amended, it is therefore ordered that said complaint be and the same is hereby dismissed at plaintiff's costs and that execution issue therefor."

On February 1, 1952, plaintiff filed its Notice of Appeal which recited that it appealed to this court from the order entered on November 29, 1951 dissolving the temporary injunction theretofore issued and from the order entered January 21, 1952 dismissing the complaint as amended at plaintiff's costs and from the judgment order of January 21, 1951 which rendered judgment against the plaintiff and in favor of the defendants for $3,000.

The only evidence produced upon the hearing upon defendants' suggestion of damages was the testimony of Lambert M. Ochsenschlager, who testified that he is a member of the law firm of Reid and Ochsenschlager with offices in Aurora; that his firm was employed by Pabst Sales Company to represent them immediately after the service of the preliminary injunction; that he and the other associates in his office, at his direction, spent 221¾ hours plus court time of 5½ days in preparation of the motion to dissolve the injunction and in

12

the examination of the authorities in connection therewith; that he did the majority of the work, spending 152¾ hours upon that branch of the case and 3½ days in court; that Mr. Reid, his partner, spent 13½ hours and two hours in court and Mr. Wm. C. Murphy, a young man employed in their office, spent 26½ hours and one day in court and Mr. Robert B. Hupp, another employee in their office, spent 29 hours and one day in court in connection with the case. Mr. Ochsenschlager further testified that he was acquainted with the fair and reasonable charge for legal services in his community, of the character and nature rendered the defendants and that the services rendered by him and Mr. Reid were worth $25 per hour and the services rendered by Mr. Murphy were worth $15 per hour and the services of Mr. Hupp were worth at the rate of $10 per hour; that the firm subsequently billed Pabst Sales Company for the services rendered by the firm in dissolving the injunction for $3,000 which amount Pabst Sales Company paid and which was received in full payment for services rendered only in connection with the dissolution of the preliminary injunction and that in his opinion the charge was a fair and reasonable one for that portion of the work, accomplished by the attorneys for their clients in this particular case.

On cross-examination this witness testified that he was first employed on Wednesday before Thanksgiving day in 1951; that he prepared the motion to dissolve and served a copy of the motion and notice of hearing on Saturday; that the hearing was scheduled for Monday but was put over until Tuesday and the hearing of the motion to dissolve was not taken up until late in the afternoon of Tuesday, November 27th and the hearing was concluded about 7:30 p. m. that evening; that the court then took the matter under advisement and on the following day the attorneys appeared in

13

court and heard the decision of the chancellor and thereafter counsel for defendants drafted the order of dissolution in accordance with the chancellor's decision. This witness further testified that in their office the time employed by those engaged in a particular case is set down on a prepared form and at the end of each day those forms are turned over to the person who places them on the record book and that he would produce that record if desired. In answer to the court's question: "What is the computation based on the hours?" The witness replied: "On that basis of the time it would be $4,495.00 and we have charged only $3000 of that to the portion up to the hearing to dissolve the injunction. We had to acquaint ourselves with the law and this was rather important and in some ways an unusual case, as the Court is well aware, and we were obliged to look up a great deal of law on it and make a very lengthy research. It is true that we had to read various cases as to other aspects of the case, but we had to do that to prepare our arguments on the motion to dissolve the injunction, but we tried to evaluate the time and not charge the full amount but only a portion of the full amount." The record then shows that counsel for the plaintiff then said: "What you are saying is that Hupp and Murphy at ten and fifteen dollars an hour and you and Mr. Reid at twenty-five dollars an hour were all working on the argument for the motion to dissolve?" To which Mr. Ochsenschlager replied: "Yes—there were a number of legal points and we each worked on certain phases of it so that we would have everything available in order to meet everything that our adversary might bring up. One person could not look up all of the authorities and so we divided it up, and that is actually the time spent. I have charged $100 a day for myself and Mr. Reid and for Mr. Murphy $50.00 and $25.00 a day in court for

14

Hupp; that is taking into consideration the fact that on these occasions more than one of us were here,— that is, we would have charged more than that if it had gone to a hearing." Counsel for plaintiff then inquired: "So that, on the hearing on the motion, it would be $275.00 a day?" To which Mr. Ochsenschlager replied: "That is right."

■ Counsel for appellant call our attention to the fact that the record discloses that from the time the preliminary injunction was served to the date of the argument on the motion to dissolve the same was heard only seven calendar days elapsed, including Thanksgiving Day, Saturday afternoon and Sunday and that after the injunction was dissolved and on the same day and on four subsequent days counsel for the respective parties appeared in court and counsel for appellant made repeated efforts to induce the chancellor to dismiss the complaint as amended for want of equity of its own motion. Counsel cite *Landis v. Wolf,* 206 Ill. 392; *Elder v. Sabin,* 66 Ill. 126; *Alexander v. Colcord,* 85 Ill. 323 and numerous Appellate Court cases which hold that the assessment of damages sustained by reason of improperly suing out a preliminary injunction cannot be based upon services rendered by the attorneys representing the defendant in the case generally but must be confined to those services which were strictly necessary to procure the dissolution of the injunction. Counsel then say there is no such proof in this case; that while the evidence does show the total amount of the time which appellee's numerous attorneys devoted to the case, no distinction is made between the time spent in getting the temporary injunction dissolved and the time spent after that purpose had been accomplished. Mr. Ochsenschlager's testimony meets the requirements of the authorities. His testimony was that a record had been kept of the time

15

expended by the several members of the firm, the charges made, what those charges were, that a bill had been rendered their client and paid; that he was acquainted with the fair and reasonable charges in his community for legal services of the character and nature rendered only in connection with the dissolution of the preliminary injunction and that in his opinion the charge made his clients and paid by them was a fair and reasonable charge.

█ · Counsel then say that if the record is sufficient to base an allowance of attorney fees, the amount allowed is grossly excessive, exorbitant and cannot be justified. Counsel call our attention to the case of *Jevne v. Osgood*, 57 Ill. 340 where the court said (pp. 346-7) that it was the duty of the chancellor to refuse to allow exorbitant and excessive fees; that the design of the statute was to reimburse the defendant for moneys which he has paid, or for which he has become liable, on the motion to dissolve; that $250 seemed to be a large sum for entering and trying a mere motion to dissolve an injunction; that only a reasonable and fair compensation should be allowed the defendant for money actually paid to an attorney, or a liability fairly and honestly incurred to pay an attorney to procure the dissolution—such a fee only as he would pay if he had no hope of having it reimbursed.

█ Numerous cases have been cited by both parties and counsel agree that it is difficult to compare cases of this nature inasmuch as each case must stand upon its own facts and a conclusion as to the amount of attorney fees incurred in procuring the dissolution of the preliminary injunction must be based upon all the elements involved. In the instant case the provisions of the contract of October 21, 1948 defines the rights and liabilities of the parties thereto. While the complaint was prolix, the facts therein alleged were

16

not involved and in availing ourselves of the right to exercise our independent judgment as MR. JUSTICE CARTWRIGHT said courts could do in the matter of attorney fees (*Lee v. Lomax,* 219 Ill. 218–21), after carefully reading the abstract of record and the voluminous briefs of counsel and after examining some of the many cases cited, the majority of this court feel that the chancellor erred in assessing the damages of the defendant, Pabst Sales Company, and conclude that the damages should be reduced to $2,000.

The complaint in this case sought a temporary injunction against Pabst Sales Company and its agents and representatives and prayed that upon a final hearing a permanent injunction against both defendants would be issued or, in the alternative, that, if it should appear, upon the final hearing that plaintiff was not entitled to a perpetual injunction that then the temporary injunction "should remain in force for such a period of time as may be necessary, under the supervision of the court, to preserve and protect the business of the plaintiff from the adverse effects of the unlawful acts of the defendants." The original complaint also sought to recover money damages from both defendants. The motion of appellees to dissolve the temporary injunction averred that the complaint did not set forth a cause of action entitling the plaintiff to an injunction; that the temporary injunction was improperly issued without notice and without adequate bond; that the plaintiff had an adequate remedy at law and that the temporary injunction works irreparable harm to the defendants and it is not supported by equitable principles. After the allowance of this motion and the preliminary injunction had been dissolved, appellant sought, in vain, to obtain from the chancellor, an order dismissing the complaint on the chancellor's own motion. Thereafter the suit was dismissed by plaintiff

upon its own motion and at its costs. Appellant, by this appeal, seeks to have that order reversed and also seeks to have the court review the order of November 29, 1951 which dissolved the temporary injunction as well as review the order awarding damages upon the dissolution of the temporary injunction.

 Appellees concede that so far as the order awarding damages to it for the dissolution of the injunction is concerned an appeal was properly taken, but as to the other two orders, they filed herein (prior to the filing of their brief) a motion to dismiss those appeals. Appellees have also filed their motion to strike certain portions of appellant's reply brief. These motions were taken with the case. In view of our conclusion no good purpose would be served by striking any portion of appellant's reply brief and that motion will be denied.

Counsel for appellees contend that the order dissolving the temporary injunction was an interlocutory one and not a final, appealable order because one of the reasons assigned for its dissolution was the failure of the plaintiff to give notice to the defendant, Pabst, of the intended application for a temporary writ and also because the complaint, at the time the order dissolving the injunction was issued, prayed for other relief.

In *Cahill v. Welch*, 208 Ill. 57 it appeared that the plaintiff was in possession of certain premises described in a deed issued to the defendant by a master in chancery following a sale of the premises under a decree of foreclosure. The complaint alleged that the plaintiff was in possession of said premises prior to the execution of the mortgage which had been foreclosed; that she had a homestead estate therein and that she was not a party to the foreclosure proceeding. The complaint prayed that, as to her, the foreclosure

18

proceeding be decreed to be null and void and set aside as a cloud upon her title and that she be decreed to be entitled to possession of the premises during her natural life and that the defendant be restrained from interfering with her possession of said premises and from removing therefrom her household furniture and other personal property situated thereon. A temporary injunction issued in accordance with the prayer of the complaint. The defendant answered and filed a motion to dissolve the injunction which motion was allowed and an order entered dissolving the injunction. The plaintiff then sought to have the court dismiss her complaint but the court declined to do so and, upon suggestions filed, assessed defendant's damages on account of the wrongful suing out of the injunction. The plaintiff then moved the court to dismiss her complaint which motion was allowed and the complaint or bill dismissed at her costs. The plaintiff then appealed from the order dissolving the injunction and from the order allowing the defendant to file suggestions of damages and from the order assessing damages. In dismissing the appeal the Supreme Court stated that an order dissolving an injunction is interlocutory, and not final and that an appeal does not lie from such order. The court then said that where the sole object of a bill is to obtain an injunction and a demurrer is filed or a motion made to dissolve the injunction upon the face of the bill, and the injunction is dissolved because the facts stated in the bill, when admitted to be true, are not sufficient, in law, to authorize an injunction to issue, the suit is virtually at an end, and the court, or the plaintiff, may dismiss the bill and an appeal or writ of error will lie from such decree. When other relief, however, is sought by the bill or when an answer is filed and the court dissolves the injunction the court should retain the bill and enter such decree as the law and facts may

19

require after final hearing. The court then continued: (p. 59) "The appellant, by her bill sought to have the court decree that she was entitled to the possession of the premises during her natural life, and to have the decree foreclosing said mortgage set aside as null and void as to her, as a cloud upon her title. The injunction prayed for in the bill was incidental only to the principal objects of the bill, and an answer having been filed by the appellee denying all the facts upon which the relief prayed for was predicated, the court could not determine such facts and dispose of the entire subject matter except upon final hearing. The order dissolving the injunction was interlocutory, and when the appellant, after that order was entered, dismissed her bill, the suit, by her own act, was terminated, and she having voluntarily ended the litigation, an appeal by her to review the record made in the progress of the suit will not lie."

The instant complaint was not a suit for an injunction alone but prayed for the following relief: (1) A temporary injunction against defendant, Pabst Sales Company; (2) A perpetual injunction against both defendants, Pabst Sales Company and A. A. Konitzer; (3) In the alternative, if the perpetual injunction is not granted, then an injunction against both defendants for such period of time as may be necessary, under the supervision of the court, to preserve and protect the business of the plaintiff from adverse effects of the unlawful acts of the defendants and to permit the plaintiff to keep and retain the customers of said business free from said unlawful acts of the defendant; (4) that the plaintiff have judgment against both defendants in the sum of $150,000 and (5) that plaintiff may have such other further and different relief as to the court shall seem meet and proper and equity may require. This was the condition of the complaint at

20

the time the temporary injunction was issued and at the time the temporary injunction was dissolved. Thereafter and on December 5, 1951 on motion of the plaintiff, an order was entered amending the complaint by striking therefrom the portion of the prayer for relief which related to money damages. The chancellor recognized that the complaint sought more than injunctive relief and declined to dismiss the complaint of his own motion but, of course, entered an order of dismissal upon plaintiff's voluntary request therefor.

 All the chancellor decided at the time he dissolved the temporary injunction, was that, when issued, it was improvidently granted. The chancellor did not hold that there was not sufficient equity in the complaint to entitle plaintiff to any of the relief sought. The order dissolving the temporary injunction cannot be said to have disposed of the entire case and is therefore not a final appealable order. The chancellor, in our opinion, very properly refused to allow plaintiff's motion to dismiss the complaint on his own motion and plaintiff, having voluntarily dismissed its complaint, cannot now be heard to say that the court erred in granting a motion which it requested the court to enter.

 The motion of appellees to dismiss the appeal from the order dissolving the temporary injunction and to dismiss the appeal from the order dismissing the complaint is sustained and these appeals are dismissed. The order awarding $3,000 damages upon the dissolution of the injunction is modified as in this opinion indicated and as so modified is affirmed.

*Appeals dismissed. Money judgment modified and as modified is affirmed.*