## CORRIGAN ET AL. *v.* BUCKLEY.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 104. Argued January 8, 1926.—Decided May 24, 1926.

1. This Court has no jurisdiction of an appeal from the Court of Appeals of the District of Columbia founded on alleged constitutional questions so unsubstantial as to be plainly without color of merit and frivolous. P. 329.

2. The Fifth Amendment is a limitation upon the powers of the General Government and is not directed against individuals. P. 330.

3. The Thirteenth Amendment denouncing slavery and involuntary servitude, that is, a condition of enforced compulsory service of one to another, does not in other matters protect the individual rights of persons of the negro race. *Id.*

4. The prohibitions of the Fourteenth Amendment have reference to state action exclusively, and not to any action of private individuals. Individual invasion of individual rights is not the subject-matter of the Amendment. *Id.*

5. Not by any of these Amendments, nor by §§ 1977–1979 Rev. Stats., are private lot owners prohibited from entering into twenty-one year mutual covenants not to sell to any person of negro blood or race. P. 331.

6. The contention that such an indenture is void as against public policy does not involve the construction or application of the Constitution or draw in question the construction of the above sections of the Revised Statutes; and therefore affords no basis for an appeal to this Court under § 250, Judicial Code, from a decree of the Court of Appeals of the District of Columbia. P. 330.

7. A contention, to constitute ground for appeal, should be raised by the petition for appeal and assignment of errors. P. 331.

8. Mere error of a court in a judgment entered after full hearing does not constitute a denial of due process of law. *Id.*

Appeal from 55 App. D. C. 30; 299 Fed. 899; dismissed.

APPEAL from a decree of the Court of Appeals of the District of Columbia, which affirmed a decree of the Supreme Court of the District in favor of Buckley in a suit to enjoin the defendant Corrigan from selling a lot

in Washington to the defendant Curtis, in violation of an indenture entered into by Buckley, Corrigan and other land owners whereby they mutually covenanted and bound themselves, their heirs and assigns, for twenty-one years, not to sell to any person of negro race or blood.

*Messrs. Louis Marshall* and *Moorfield Storey,* with whom *Messrs. James A. Cobb, Henry E. Davis, William H. Lewis, James P. Schick, Arthur B. Spingarn,* and *Herbert K. Stockton* were on the brief, for appellants.

The decrees of the courts below constitute a violation of the Fifth and Fourteenth Amendments to the Constitution, in that they deprive the appellants of their liberty and property without due process of law. *Buchanan* v. *Warley,* 245 U. S. 60; *Strauder* v. *West Virginia,* 100 U. S. 303; *Virginia* v. *Rives,* 100 U. S. 313; *United States* v. *Harris,* 106 U. S. 629; *Scott* v. *McNeal,* 154 U. S. 34; *Chicago, B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 226; *Home Tel. & Tel. Co.* v. *Los Angeles,* 227 U. S. 278; *Murray's Lessee* v. *Hoboken Land & Imp. Co.,* 18 How. 276; *Hovey* v. *Elliott,* 167 U. S. 409.

For the reasons considered in *Buchanan* v. *Warley,* 245 U. S. 60, it would have been beyond the legislative power to have enacted that a covenant in the precise terms of that involved in the present case should be enforceable by the courts by suit in equity and by means of a decree of specific performance, an injunction, and proceedings for contempt for failure to obey the decree. It seems inconceivable that, so long as the legislature refrains from passing such an enactment, a court of equity may, by its command, compel the specific performance of such a covenant, and thus give the sanction of the judicial department of the Government to an act which it was not within the competency of its legislative branch to authorize. This Court has repeatedly included the judicial department within the inhibitions against the violation of

the constitutional guaranties which we have invoked. The immediate consequence of the decrees now under review is to bring about that which the legislative and executive departments of the Government are powerless to accomplish. It would seem to follow that by these decrees the appellants have been deprived of their liberty and property, not by individual, but by governmental action. These decrees have all the force of a statute. They have behind them the sovereign power. In rendering these decrees, the courts which have pronounced them have functioned as the law-making power. See *Gondolfo* v. *Hartman,* 49 Fed. 181; *McCabe* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 235 U. S. 151.

On the applicability of constitutional amendments to the District of Columbia, see *Siddons* v. *Edmondston,* 42 App. D. C. 459; *Downes* v. *Bidwell,* 182 U. S. 244; *Evans* v. *United States,* 31 App. D. C. 544; *Stoutenburgh* v. *Frazier,* 16 App. D. C. 229; *Curry* v. *District of Columbia,* 14 App. D. C. 423; *Wight* v. *Davidson,* 181 U. S. 371; *Moses* v. *United States,* 16 App. D. C. 428; *Callan* v. *Wilson,* 127 U. S. 540; *Lappin* v. *District of Columbia,* 22 App. D. C. 68; *Smoot* v. *Heyl,* 227 U. S. 518; *Block* v. *Hirsh,* 256 U. S. 135; *Adkins* v. *Children's Hospital,* 261 U. S. 525; *District of Columbia* v. *Brooke,* 214 U. S. 138; *Geofroy* v. *Riggs,* 133 U. S. 258; *Talbot* v. *Silver Bow County,* 139 U. S. 444.

The covenant, the enforcement of which has been decreed by the courts below, is contrary to public policy. The public policy of this country is to be ascertained from its Constitution, statutes and decisions, and the underlying spirit illustrated by them. The covenant is not only one which restricts the use and occupancy by negroes of the various premises covered by its terms, but it also prevents the sale, conveyance, lease or gift of any such premises by any of the owners or their heirs and assigns to negroes or to any person or persons of the negro race

or blood, perpetually, or at least for a period of twenty-one years. It is in its essential nature a contract in restraint of alienation and is, therefore, contrary to public policy. *De Peyster* v. *Michael,* 6 N. Y. 497; *Potter* v. *Couch,* 141 U. S. 296; *Manierre* v. *Welling,* 32 R. I. 104; *Mandlebaum* v. *McDonell,* 29 Mich. 79; *In re Rosher,* L. R. 26 Ch. Div. 801; *In re Macleay,* L. R. 20 Eq. 186; *Smith* v. *Clark,* 10 Md. 186; *McCullough* v. *Gilmore,* 11 Pa. 370; *Bennett* .v. *Chapin,* 77 Mich. 527; *Attwater.* v. *Attwater,* 18 Beav. 330; *Billing* v. *Welch,* Irish Rep., 6 C. L. 88; *Schermerhorn* v. *Negus,* 1 Denio 148; *Johnson* v. *Preston,* 226 Ill. 447; *Anderson* v. *Carey,* 36 Ohio St. 506; *Barnard* v. *Bailey,* 2 Harr. (Del.) 56; *Williams* v. *Jones,* 2 Swan (Tenn.) 620; *Brothers* v. *McCurdy,* 36 Pa. 407. See also *Re Rosher,* L. R. 26 Ch. Div. 801, and *Re Dugdale,* L. R. 38 Ch. Div. 176, in both of which cases *In re Macleay,* L. R. 20 Eq. 186, was disapproved. 4 Kent's Commentaries 131.

Independently of our public policy as deduced from the Constitution, statutes, and decisions, with respect to the segregation of colored persons and the fact that the covenant sued upon is in restraint of alienation, we contend that such a contract as that now under consideration militates against the public welfare. The covenant is not ancillary to the main purpose of a valid contract and therefore is an unlawful restraint. *Test Oil Co.* v. *La Tourrette,* 19 Okla. 214; 3 Williston on Contracts, § 1642; *Miles Medical Co.* v. *Park & Sons Co.,* 220 U. S. 373. It is a subject of serious consideration as to whether such a covenant, entered into, as in this case, by twenty-four different individuals, would not constitute a common law conspiracy. *Callan* v. *Wilson,* 127 U. S. 540; *Granada Lumber Co.* v. *Mississippi,* 217 U. S. 440; *Lumber Assn.* v. *United States,* 234 U. S. 600.

Cases relied upon in the court below to sustain the enforcement of this covenant are not only unsound but

also distinguishable. *Los Angeles Investment Co.* v. *Gary,* 181 Cal. 680; *Queensboro Land Co.* v. *Cazeaux,* 136 La. 724; *Koehler* v. *Rowland,* 275 Mo. 573; *Parmalee* v. *Morris,* 218 Mich. 625.

*Mr. James S. Easby-Smith,* with whom *Messrs. David A. Pine* and *Francis W. Hill, Jr.,* were on the brief, for appellee.

MR. JUSTICE SANFORD delivered the opinion of the Court.

This is a suit in equity brought by John J. Buckley in the Supreme Court of the District of Columbia against Irene H. Corrigan and Helen Curtis, to enjoin the conveyance of certain real estate from one to the other of the defendants.

The case made by the bill is this: The parties are citizens of the United States, residing in the District. The plaintiff and the defendant Corrigan are white persons, and the defendant Curtis is a person of the negro race. In 1921, thirty white persons, including the plaintiff and the defendant Corrigan, owning twenty-five parcels of land, improved by dwelling houses, situated on S Street, between 18th and New Hampshire Avenue, in the City of Washington, executed an indenture, duly recorded, in which they recited that for their mutual benefit and the best interests of the neighborhood comprising these properties, they mutually covenanted and agreed that no part of these properties should ever be used or occupied by, or sold, leased or given to, any person of the negro race or blood; and that this covenant should run with the land and bind their respective heirs and assigns for twenty-one years from and after its date.

In 1922, the defendants entered into a contract by which the defendant Corrigan, although knowing the defendant Curtis to be a person of the negro race, agreed to

sell her a certain lot, with dwelling house, included within the terms of the indenture, and the defendant Curtis, although knowing of the existence and terms of the indenture, agreed to purchase it. The defendant Curtis demanded that this contract of sale be carried out, and, despite the protest of other parties to the indenture, the defendant Corrigan had stated that she would convey the lot to the defendant Curtis.

The bill alleged that this would cause irreparable injury to the plaintiff and the other parties to the indenture, and that the plaintiff, having no adequate remedy at law, was entitled to have the covenant of the defendant Corrigan specifically enforced in equity by an injunction preventing the defendants from carrying the contract of sale into effect; and prayed, in substance, that the defendant Corrigan be enjoined during twenty-one years from the date of the indenture, from conveying the lot to the defendant Curtis, and that the defendant Curtis be enjoined from taking title to the lot during such period, and from using or occupying it.

The defendant Corrigan moved to dismiss the bill on the grounds that the " indenture or covenant made the basis of said bill " is (1) " void in that the same is contrary to and in violation of the Constitution of the United States," and (2) " is void in that the same is contrary to public policy.". And the defendant Curtis moved to dismiss the bill on the ground that it appears therein that the indenture or covenant " is void, in that it attempts to deprive the defendant, the said Helen Curtis, and others of property, without due process of law; abridges the privilege and immunities of citizens of the United States, including the defendant, Helen Curtis, and other persons within this jurisdiction [and denies them] the equal protection of the law, and therefore, is forbidden by the Constitution of the United States, and especially by the Fifth, Thirteenth, and Fourteenth

Amendments thereof, and the Laws enacted in aid and under the sanction of the said Thirteenth and Fourteenth Amendments."

Both of these motions to dismiss were overruled, with leave to answer. 52 Wash. L. Rep. 402. And the defendants having elected to stand on their motions, a final decree was entered enjoining them as prayed in the bill. This was affirmed, on appeal, by the Court of Appeals of the District. 299 Fed. 899. The defendants then prayed an appeal to this Court on the ground that such review was authorized under the provisions of § 250 of the Judicial Code—as it then stood, before the amendment made by the Jurisdictional Act of 1925—in that the case was one "involving the construction or application of the Constitution of the United States" (par. 3), and "in which the construction of" certain laws of the United States, namely §§ 1977, 1978, 1979 of the Revised Statutes, were "drawn in question" by them (par. 6). This appeal was allowed, in June, 1924.

The mere assertion that the case is one involving the construction or application of the Constitution, and in which the construction of federal laws is drawn in question, does not, however, authorize this Court to entertain the appeal; and it is our duty to decline jurisdiction if the record does not present such a constitutional or statutory question substantial in character and properly raised below. *Sugarman* v. *United States,* 249 U. S. 182, 184; *Zucht* v. *King,* 260 U. S. 174, 176. And under well settled rules, jurisdiction is wanting if such questions are so unsubstantial as to be plainly without color of merit and frivolous. *Wilson* v. *North Carolina,* 169 U. S. 586, 595; *Delmar Jockey Club* v. *Missouri,* 210 U. S. 324, 335; *Binderup* v. *Pathe Exchange,* 263 U. S. 291, 305; *Moore* v. *New York Cotton Exchange,* 270 U. S. 593.

Under the pleadings in the present case the only constitutional question involved was that arising under the

assertions in the motions to dismiss that the indenture or
covenant which is the basis of the bill, is " void " in that it
is contrary to and forbidden by the Fifth, Thirteenth and
Fourteenth Amendments. This contention is entirely
lacking in substance or color of merit. The Fifth Amend-
ment " is a limitation only upon the powers of the Gen-
eral Government," *Talton* v. *Mayes,* 163 U. S. 376, 382,
and is not directed against the action of individuals. The
Thirteenth Amendment denouncing slavery and involun-
tary servitude, that is, a condition of enforced compulsory
service of one to another, does not in other matters pro-
tect the individual rights of persons of the negro race.
*Hodges* v. *United States,* 203 U. S. 1, 16, 18. And the
prohibitions of the Fourteenth Amendment " have refer-
ence to state action exclusively, and not to any action of
private individuals." *Virginia* v. *Rives,* 100 U. S. 313,
318; *United States* v. *Harris,* 106 U. S. 629, 639. " It is
State action of a particular character that is prohibited.
Individual invasion of individual rights is not the subject-
matter of the Amendment." *Civil Rights Cases,* 109
U. S. 3, 11. It is obvious that none of these Amendments
prohibited private individuals from entering into con-
tracts respecting the control and disposition of their own
property; and there is no color whatever for the conten-
tion that they rendered the indenture void. And, plainly,
the claim urged in this Court that they were to be looked
to, in connection with the provisions of the Revised Stat-
utes and the decisions of the courts, in determining the
contention, earnestly pressed, that the indenture is void
as being " against public policy," does not involve a con-
stitutional question within the meaning of the Code
provision.

The claim that the defendants drew in question the
" construction " of §§ 1977, 1978 and 1979 of the Revised
Statutes, is equally unsubstantial. The only question
raised as to these statutes under the pleadings was the

assertion in the motion interposed by the defendant Curtis, that the indenture is void in that it is forbidden by the laws enacted in aid and under the sanction of the Thirteenth and Fourteenth Amendments. Assuming that this contention drew in question the " construction " of these statutes, as distinguished from their " application," it is obvious, upon their face, that while they provide, *inter alia,* that all persons and citizens shall have equal right with white citizens to make contracts and acquire property, they, like the Constitutional Amendment under whose sanction they were enacted, do not in any manner prohibit or invalidate contracts entered into by private individuals in respect to the control and disposition of their own property. There is no color for the contention that they rendered the indenture void; nor was it claimed in this Court that they had, in and of themselves, any such effect.

We therefore conclude that neither the constitutional nor statutory questions relied on as grounds for the appeal to this Court have any substantial quality or color of merit, or afford any jurisdictional basis for the appeal.

And, while it was further urged in this Court that the decrees of the courts below in themselves deprived the defendants of their liberty and property without due process of law, in violation of the Fifth and Fourteenth Amendments, this contention likewise cannot serve as a jurisdictional basis for the appeal. Assuming that such a contention, if of a substantial character, might have constituted ground for an appeal under paragraph 3 of the Code provision, it was not raised by the petition for the appeal or by any assignment of error, either in the Court of Appeals or in this Court; and it likewise is lacking in substance. The defendants were given a full hearing in both courts; they were not denied any constitutional or statutory right; and there is no semblance of ground for any contention that the decrees were so plainly arbitrary

and contrary to law as to be acts of mere spoliation. See
*Delmar Jockey Club* v. *Missouri, supra,* 335. Mere error
of a court, if any there be, in a judgment entered after a
full hearing, does not constitute a denial of due process
of law. *Central Land Co.* v. *Laidley,* 159 U. S. 103, 112;
*Jones* v. *Buffalo Creek Coal Co.,* 245 U. S. 328, 329.

It results that, in the absence of any substantial con-
stitutional or statutory question giving us jurisdiction of
this appeal under the provisions of § 250 of the Judicial
Code, we cannot determine upon the merits the conten-
tions earnestly pressed by the defendants in this court
that the indenture is not only void because contrary to
public policy, but is also of such a discriminatory char-
acter that a court of equity will not lend its aid by en-
forcing the specific performance of the covenant. These
are questions involving a consideration of rules not ex-
pressed in any constitutional or statutory provision, but
claimed to be a part of the common or general law in
force in the District of Columbia; and, plainly, they may
not be reviewed under this appeal unless jurisdiction of
the case is otherwise acquired.

Hence, without a consideration of these questions, the
appeal must be, and is

*Dismissed for want of jurisdiction.*