### TEAGUE v. BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN et al.

#### No. 8937.

Circuit Court of Appeals, Sixth Circuit.

April 9, 1942.

54

Charles H. Houston, of Washington, D. C. (Charles H. Houston and J. T. Settle, both of Memphis, Tenn., on the brief), for appellant.

Harold C. Heiss, of Cleveland, Ohio (Harold C. Heiss and Russell B. Day, both of Cleveland, Ohio, and William P. Moss, of Jackson, Tenn., on the brief), for appellees.

Before SIMONS and McALLISTER, Circuit Judges, and SWINFORD, District Judge.

SIMONS, Circuit Judge.

The appellant, a fireman employed by the Gulf, Mobile & Northern Railroad Company, conceiving his seniority rights as an employee of the Railroad to have been impaired by reason of an unlawful agreement between the Railroad and the Brotherhood, the collective bargaining agent of his craft, brought the present suit in the United States District Court for the Western District of Tennessee, for himself and others of his class, to set aside the agreement, seeking injunction, discovery, restoration of seniority rights, damages and other relief. The bill was dismissed for want of a Federal question.

The basic question set forth by the appellant, upon which he says the case turns, is whether Congress, under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., has conferred upon the representative of the craft or class to which he belongs, the power to make a collective bargaining agreement destructive of the vested rights of the minority workers in order to advantage the majority, and if so, whether such grant of power violates the due process clause of the Fifth Amendment. The appellant asserts that he does not ground his claim of Federal jurisdiction on diversity of citizenship, but bases it expressly on § 24(8) of the Judicial Code, 28 U.S.C.A. § 41(8), which gives to United States District Courts original jurisdiction of all suits and proceedings arising under any law regulating commerce.

The appellant is a negro locomotive fireman, employed, up to May 17, 1928, on a hand-fired coal burning locomotive in interstate freight service on the Tennessee division of the Railroad, with seniority rights dating from March 15, 1917. He asserts that under uniform employment contracts between individual negro firemen and the Railroad he is entitled to seniority preference rights on employment assignments carrying favored rates of pay, hours and working conditions, and such rights were recognized and respected by both the Railroad and the Brotherhood up to May 5, 1938. He alleges that on that date a secret agreement was entered into between the Brotherhood and the Railroad, whereby white firemen who were members of the Brotherhood, were given preference over negro firemen, in assignments on mechanical stoker fired locomotives, regardless of seniority, and that such service is a preferred assignment involving less work and less hazard that on hand-fired locomotives. On May 17, 1938, a mechanical stoker fired locomotive was placed on the appellant's run. Though entitled to assignment on the engine, because of seniority, he was displaced by a junior white fireman, a member of the Brotherhood, in pursuance of the alleged secret agreement. In consequence, he asserts that he lost his regular employment; was forced on the "extra board"; has not since worked regularly, but only at intervals; and has been forced to accept assignments more hazardous and burdensome than would have been his if his seniority rights had been respected. The Railroad has refused to permit him to learn the technique of handling a mechanical stoker, although junior white firemen have been so instructed, and at the time of filing his suit he had already lost 200 days pay, and his annuity potential under the Railway Retirement Act of 1937, 45 U.S.C.A. Chap. 9, § 228a et seq. has been prejudiced.

The appellant further asserts that since the passage of the Railway Labor Act of 1934, the Brotherhood, by virtue of its membership constituting a majority of the locomotive firemen, has established itself as their exclusive bargaining representative for the entire craft, including a minority of non-member negro firemen; that instead of acting impartially for the entire class it has used its position to eliminate the negro firemen and obtain a monopoly of employment for its own white members, as a result of which employment of negro firemen on all railroads has declined. He also asserts that the Brotherhood has refused, and still refuses, to disclose to the negro firemen its proposed actions as sole

bargaining representative of the craft, to give them notice or opportunity to be heard, or to permit them to vote on matters affecting their interests, and that pursuant to the agreement every negro locomotive fireman has been displaced by a junior white fireman, when a mechanical stoker fired engine has been placed on his run. The appellant alleges that he has exhausted his administrative remedies; that he has requested both the Railroad and the Brotherhood to set aside the agreement of January 5, and to restore his seniority rights, but that both have denied him relief. He has submitted his grievance to the National Railroad Adjustment Board and to the National Mediation Board, but in each case his petition has been rejected without hearing, based on lack of jurisdiction.

██ The single question presented for adjudication is whether the complaint states a cause of action that arises under the Constitution or laws of the United States. The Constitutional provision relied upon is the Fifth Amendment, and the law is the Railway Labor Act. Accepting, as we must, the allegations of the complaint, and so assuming that the defendants entered into a secret agreement, the effect of which was to impair the seniority rights of the plaintiff and members of his class, and that the complaint states a justiciable controversy, our inquiry must be directed to whether it is cognizable in a Federal Court. It has long been settled that a suit arises under the Constitution and laws of the United States only when the plaintiff's own statement of his cause of action shows that it is based upon a Federal law, or upon the Constitution. Louisville & Nashville R. R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 43, 53 L.Ed. 126. "It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States." It is here urged that the defendants assume to act under the authority of the Railway Labor Act, and for that reason an interpretation of the statute becomes important, particularly in respect to the meaning of the term "representative" as defined in § I, sixth. But it is settled law that a complaint will not avail as a basis of jurisdiction insofar as it goes beyond a statement of the plaintiff's action, and anticipates or replies to a probable defense.

Devine v. City of Los Angeles, 202 U.S. 313, 334, 26 S.Ct. 652, 50 L.Ed. 1046; The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716.

██ The present suit concededly is based upon private contracts between the appellant and members of his class on the one hand, and the Railroad on the other. The obligation of the contract being a creation of the state, no Federal right supports the appellant's claim that the contract has been broken, Gully v. First Nat'l Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70, and insofar as the complaint alleges an invasion of the plaintiff's property right to seniority through a secret, discriminatory and conspiratory agreement between the Railroad and the Brotherhood, it sounds in tort, and is to be adjudicated upon the applicable common law of the state. It does not raise a Federal question. The mere fact that one of the alleged conspirators comes into existence through the operation of a Federal law does not bring into question either the validity or the interpretation of the statute. People of Puerto Rico v. Russell & Co., 288 U.S. 476, 483, 53 S.Ct. 447, 77 L.Ed. 903. There it was said: "The federal nature of the right to be established is decisive—not the source of the authority to establish it." Even were this a suit to enforce a right which takes its origin in the laws of the United States, a Federal question would not necessarily be involved for, as was said earlier, "A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends." Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205.

The necessity for precise delineation of the limited jurisdiction of Federal Courts to controversies raising Federal questions, is clearly demonstrated in the present instance by the speculative character of the anticipated defense. It is conceivable that defense to the present action will necessarily not involve the Railway Labor Act either immediately or remotely. The defendants categorically may deny that a secret or unlawful agreement such as is alleged, exists, or deny that the Brother-

56

hood is a collective bargaining agent for the appellant or the members of his craft. Clearly, in such case, no Federal question will appear even were it permissible to aid the complaint by the allegations of the answer. It could not then even be said, as was said in Gully v. First Nat'l Bank, supra [299 U.S. 109, 57 S.Ct. 100, 81 L.Ed. 70], that a question of Federal law is lurking in the background, "a dispute so doubtful and conjectural, so far removed from plain necessity, is unavailing to extinguish the jurisdiction of the states." "The courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by."

 Reverting to the appellant's own statement of his case, such rights as are here claimed arise from the individual contracts of the negro firemen with the defendant Railroad. The appellant is unable to point to provision of the Railway Labor Act which protects such rights, or permits their invasion. The provisions of § 2, subd. eighth make the terms of the collective bargaining agreement a part of the contract of employment between the carrier and each employee—the case, nevertheless, remains one based upon a contract between private parties cognizable, if at all, under state law.

Nor does the plaintiff establish a basis for Federal jurisdiction by assertion of right under the Fifth Amendment. The Fifth Amendment relates but to governmental action, federal in character, not to action by private persons. Corrigan v. Buckley, 271 U.S. 323, 46 S.Ct. 521, 70 L.Ed. 969; National Federation of Ry. Workers v. National Mediation Board, 71 App.D.C. 266, 110 F.2d 529, 537. Private parties acting upon their own initiative and expressing their own will, however else they may offend and their acts give rise to justiciable controversies, do not thereby offend the guarantees of the Constitution. Grovey v. Townsend, 295 U. S. 45, 55 S.Ct. 622, 78 L.Ed. 1292, 97 A.L.R. 680. The only governmental action here alleged consists of the enactment of the Railway Labor Act, of which § 2 provides that the majority of any craft shall have the right to determine who shall represent it. The term "representative" is defined to mean "any person or persons, labor union, organization, or corporation"

designated by employees to act for them. While the employees are guaranteed the right to select a common bargaining representative, there is nothing in the Act which authorizes their representative to impair the personal or property rights of the employees for whom the bargaining agency acts. There is, therefore, no basis of Federal jurisdiction under the Fifth Amendment through proscribed Federal government action.

If the allegations of the complaint are true, the appellant has a grievance, and one that is substantial and not merely colorable or fanciful. Somewhere must reside judicial power to adjudicate it, and grant him and others of his class adequate relief. It is not within our province to say how or where. We have but to point out that he has mistakenly selected his forum, and that the limitations upon the Federal judicial power and the rules by which they are defined, require that the decree below be, and it is,

Affirmed.