**Brian T. REED, Plaintiff,**

v.

**John T. HADDEN, Warden, F. C. I., Englewood, Defendants.**

Civ. A. No. 79–K–342.

United States District Court, D. Colorado.

July 6, 1979.

Michael G. Katz, Acting Federal Public Defender, Denver, Colo., for plaintiff.

Jerre W. Dixon, Asst. U. S. Atty., Denver, Colo., for defendants.

## ORDER OF DISMISSAL

KANE, Judge.

This is an action under 42 U.S.C. § 1983 by an inmate at the Federal Correctional Institution in Englewood, Colorado.[1] Plaintiff has alleged that he was arbitrarily, capriciously, and wrongfully put in Protective Custody lock-up while incarcerated at the FCI Englewood and that he was thereby denied his rights to life, welfare, and safety as a federal prisoner. In addition, plaintiff asserts that this conduct gives rise to a cause of action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.,* and the fifth amendment's guarantee that no person be deprived of liberty without due process of law.

1. According to Rudy Franco, case manager of the Lower East Unit of the Federal Correctional Institution, Englewood, Colorado, plaintiff has

Defendant filed a motion to dismiss or in the alternative for summary judgment on May 25, 1979. Plaintiff filed a memorandum in opposition to said motion on June 14, 1979. The matter is now ready for disposition.

I

Plaintiff asserts that his confinement in Protective Custody lock-up while at the FCI Englewood denied him his rights to life, welfare, and safety; and that these allegations support a cause of action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* Plaintiff is mistaken.

In the absence of consent, the doctrine of sovereign immunity bars any action from being brought against the federal government. Consent is a jurisdictional requirement without which the suit cannot be maintained. Through a series of legislation, Congress has broadened the consent of the federal government to be sued.

The Federal Tort Claims Act was enacted to provide relief "to those suffering injury from the negligence of government employees." *United States v. Muniz,* 374 U.S. 150, 165, 83 S.Ct. 1850, 1859, 10 L.Ed.2d 805 (1963). The Act grants the individual the right to sue the United States

> for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b).

Thus, the liability of the United States is limited to claims brought for injuries which would be compensable if committed by a

been transferred to the Federal Correctional Institution in Petersburg, Virginia.

private person. The injuries plaintiff claims to have suffered are based on alleged constitutional deprivations, i. e., the right to life, welfare, and safety. Since there is no legal theory which would support the liability of a private person for the injuries alleged herein,[2] then the federal government, concomitantly, cannot be liable for those injuries under the Federal Tort Claims Act.

■ It should also be noted that even if plaintiff stated a cognizable claim under the Federal Tort Claims Act, the government is relieved from liability on

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The discretionary exception to the Federal Tort Claims Act bars any recovery predicated on the classification of inmates. In *Marchesani v. McCune*, 531 F.2d 459, 461 (10th Cir. 1976), *cert. denied*, 429 U.S. 846, 97 S.Ct. 127, 50 L.Ed.2d 117, the Tenth Circuit acknowledged that "the classification of prisoners rests within the sound discretion of the Attorney General by virtue of the authority vested in him under 18 U.S.C. § 4001 and that it remains a necessary tool in the management and control of the penal and correctional institutions." *See also Young v. Wainwright*, 449 F.2d 338 (5th Cir. 1971); 18 U.S.C. § 4042. In other words, the Act will provide relief in those instances where inmates suffer injury caused by the negligence of government employees. *See Unit-*

ed States v. Muniz, supra; Cohen v. United States, 252 F.Supp. 679 (D.Ga.1966).

■ For the reasons hereinabove stated, plaintiff's claim under 28 U.S.C. § 1346(b) is dismissed for failure to state a claim upon which relief can be granted.

## II

■ Plaintiff also claims that confinement in protective custody violated his fifth amendment guarantee that no person be deprived of liberty without due process of law. In recognizing that a governmental penal institution "has traditionally been granted the widest latitude in the dispatch of its own internal affairs," the Tenth Circuit, in *Marchesani v. McCune, supra,* concluded

when due process contentions are raised relative to the operation, maintenance and administration of the penal system, the courts should be acutely aware that caution must be exercised in achieving a careful balance of the interests of that system as against the interests of the prisoners.

*Id.* at 461. The rationale propounded by the Tenth Circuit, in finding that plaintiff's fifth amendment rights had not been violated, is persuasive:

The governing rule adopted by this court is much akin to the philosophy above quoted. We have held that the control and management of federal penal institutions lies within the sound discretion of the responsible administrative agency, and judicial review will be granted only upon a showing that prison officials have exercised their discretionary powers in such manner as to constitute clear abuse or caprice. . . .

2. In *Corrigan v. Buckley,* 271 U.S. 323, 46 S.Ct. 521, 70 L.Ed. 969 (1926), the United States Supreme Court unequivocally stated:

The Fifth Amendment 'is a limitation only upon the powers of the General Government,' *Talton v. Mayes,* 163 U.S. 376, 382 [16 S.Ct. 986, 988 (41 L.Ed. 196)], and is not directed against the action of individuals.

In referring to the fourteenth amendment prohibitions, the Court held

'It is State action of a particular character that is prohibited. Individual invasion of individual rights is not the subject-matter of the Amendment.' Civil Rights Cases, 109 U.S. 3, 11 [38 S.Ct. 18, 21 (27 L.Ed. 835)]. *Id.* at 330, 46 S.Ct. at 523. Since a private individual cannot violate another individual's constitutional rights, then the United States cannot, *a fortiori,* be liable under the Federal Tort Claims Act.

It is the duty of those charged with the administration of federal prisons to see that prisoners are treated properly, giving due recognition to the fact that rights and privileges which are not constitutionally guaranteed must necessarily be varied in application in order to accommodate the particular needs and exigencies of the penal environment. Prisoners are, by definition, prisoners. Many "in house" regulations and decisions of prison authorities which may be considered as deprivations of "property" or "liberty" under other circumstances and environs, are necessary in order to protect the prisoner, to protect other prisoners, and to operate the institution. Many prisoners are unpredictable. Prison setting is, at best, tense. It is sometimes explosive, and always potentially dangerous. The judgments of prison authorities, under such circumstances, are often predicated on "educated" estimates or guesses resting on suspicion. The overall atmosphere does not blend with many of the traditional "due process" requirements. The problem was perhaps best placed in focus in *Cafeteria Workers v. McElroy* [367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)], supra:

. . . consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.

Id. at 462. *See also Dolph v. Crisp,* 446 F.Supp. 1179 (E.D.Okl.1978). In the context of transferring an inmate to a different prison facility, the Supreme Court, in *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), determined that

[a]s long as the conditions or degree of confinement to which the prisoner is subjected are within the sentence imposed upon him and are not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight. The Clause does not require hearings in connection with trans-

fers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive. *Id.* at 242, 96 S.Ct. at 2547.

*See Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Recently, in an eighth amendment context, the Supreme Court concluded that

[i]t is perfectly obvious that every decision to remove a particular inmate from the general prison population for an indeterminate period could not be characterized as cruel and unusual. If new conditions of confinement are not materially different than those affecting other prisoners, the transfer for the duration of the prisoner's sentence might be completely unobjectionable and well within the authority of the prison administrator.

*Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). *See Twyman v. Crisp,* 584 F.2d 352 (10th Cir. 1978).

█ This court is particularly sensitive to the disfavor in which motions to dismiss Civil Rights Act cases are held; especially when it is a *pro se* claimant. [The Federal Public Defender was appointed to represent plaintiff subsequent to the filing of the complaint.] Nevertheless, it is beyond doubt that no set of facts can be proven which would support plaintiff's claims for relief in this case.

In addition, there is a noted absence of allegations regarding the participation of defendant Hadden in this case. Courts in this circuit have consistently recognized that "personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic,* 545 F.2d 1260, 1262–63 (10th Cir. 1976); *Battle v. Lawson,* 352 F.Supp. 156 (W.D.Okl.1972). The United States Supreme Court, in *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), reaffirmed the rule that *respondeat superior* is still inapplicable to actions under § 1983.

For all of the foregoing reasons IT IS ORDERED that this complaint and civil action are dismissed for failure to state a cognizable federal claim.