## NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 31, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 31, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

In the Matter of )
)
That Portion of Lots 1 & 2, Block 1, )
Comstock Park Second Addition, )
According to Plat Recorded in Volume 2 )
of Plats, Page 84, Situate in the City And )
County of Spokane, Washington, Lying )
Easterly of the Following Described Line: )
Beginning at the Northwest Corner of Said )
Lot 1; Thence N89°59'27"E, Along the )
North Line of Said Lot 1, 11.00 Feet; )
Thence S09°39' 47'W, Generally Along a )
6.0° Foot Board Fence, to the South Line )
of Said Lot 2 and the Point of Terminus; )
Except a Portion Thereof Described as )
Follows: Beginning at the Southeast Corner )
of Said Lot 2; Thence Southwesterly Along )
the Southerly Line of Said Lot 2 to the )
Southwest Corner Thereof; Thence )
Northerly Along the Westerly Line of Said )
Lot 2 A Distance of 38.0 Feet; Thence )
Northeasterly to the Point of Beginning; )
)
ALEX MAY, owner of said property, )
)
Petitioner, )
v. )
)
SPOKANE COUNTY, necessary party; )
and VICKY DALTON, SPOKANE )
COUNTY AUDITOR, in her official )
capacity, necessary party, )
)
Respondents. )
)

No. 99598-2

En Banc

Filed

March 31, 2022

_____

*In re That Portion of Lots 1 & 2*, No. 99598-2

WHITENER, J.—This case involves the delicate balance required in addressing the elimination of morally repugnant covenants and the preservation of the documented history of disenfranchisement of a people. RCW 49.60.227 permits a court to strike a racially restrictive, legally unenforceable covenant from the public records and eliminate the covenant from the title. This case concerns what, under the statute, striking from the public records and eliminating from the title means and whether a court order declaring the covenant struck and void is all that is required or allowed.

Alex May sought a declaratory action under former RCW 49.60.227 (2006) to have a racially restrictive covenant voided and physically removed from the title to his property and from the public records. Both the trial court and the Court of Appeals concluded that the statute at issue does not allow the physical removal of the covenant from the title but, instead, allows only for an order voiding the covenant to be filed with the title. In the interim, the legislature amended RCW 49.60.227, clarifying the procedure under which these covenants are struck and eliminated.[1] *See* LAWS OF 2021, ch. 256.

We hold that the interim amendments in Laws of 2021, chapter 256, section 4 apply, and therefore we need not address the statute under which May initially

---

[1] The amendments to RCW 49.60.227 are in effect. However, to avoid confusion, we refer to the iteration of the statute that May brought his case under as RCW 49.60.227, and the amendments to the statute as Laws of 2021, chapter 256.

*In re That Portion of Lots 1 & 2*, No. 99598-2

sought to have the covenants removed. Accordingly, we remand to the trial court for relief under Laws of 2021, chapter 256, section 4.

FACTS AND PROCEDURAL HISTORY

In 1953, William H. Cowles Jr. and John McKinley, as executors of the estate of William H. Cowles Sr., filed a declaration of protective covenants for the lots they still owned in the Comstock Park Second Addition. Covenant subsection (c) reads, "No race or nationality other than the white race shall use or occupy any building on any lot, except that this covenant shall not prevent occupancy by domestic servants of a different race or nationality employed by an owner or tenant." Clerk's Papers (CP) at 34.

In 2013, Katherine Gregory owned the property at issue in this case, located in the Comstock Park Second Addition. She conveyed the property by statutory warranty deed to Aaron and Sadie Lake. The property was conveyed subject to

> [c]ovenants, conditions, restrictions and/or easements; but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, family status, or national origin to the extent such covenants, conditions or restrictions violate Title 42, Section 3604(c), of the United States Codes: Recorded: August 14, 1953. Recording Information: 189339B[.]

*Id*. at 63. Gregory's declaring the covenant void in the sale did not physically remove it from the public records.

3

*In re That Portion of Lots 1 & 2*, No. 99598-2

In September 2017, Alex May and his wife, Alexandra May, bought the property from the Lakes. They bought it "subject to covenants, conditions, restrictions and easements, if any, affecting title, which may appear in public record, including those shown on any recorded plat or survey." *Id*. at 38.

On March 22, 2018, May filed a complaint for declaratory relief against Spokane County seeking to have the racially restrictive covenant voided under RCW 49.60.224,[2] and "to strike that same subsection from public record and eliminating it from the title of the property" under RCW 49.60.227. *Id*. at 3. The parties later stipulated to adding Spokane County Auditor Vicky Dalton as a necessary party.

In March 2019, May moved for summary judgment asking the court "to issue a declaratory judgment finding Subsection C of the real property restrictive covenant

---

[2] RCW 49.60.224 reads,

(1) Every provision in a written instrument relating to real property which purports to forbid or restrict the conveyance, encumbrance, occupancy, or lease thereof to individuals of a specified race, creed, color, sex, national origin, citizenship or immigration status, sexual orientation, families with children status, honorably discharged veteran or military status, or with any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person who is blind, deaf, or physically disabled, and every condition, restriction, or prohibition, including a right of entry or possibility of reverter, which directly or indirectly limits the use or occupancy of real property on the basis of race, creed, color, sex, national origin, citizenship or immigration status, sexual orientation, families with children status, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person who is blind, deaf, or physically disabled is void.
        (2) It is an unfair practice to insert in a written instrument relating to real property a provision that is void under this section or to honor or attempt to honor such a provision in the chain of title.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

created on August 12, 1953 void by reason of RCW 49.60.224 and issue an order striking Subsection C from the public record and eliminating the provision from the property's title." *Id.* at 23-24; *see id*. at 34-36.

Spokane County and Dalton opposed the motion on multiple grounds, but they acknowledged that there was no dispute that the covenant in this case is void and unenforceable under RCW 49.60.224. However, they argued that seeking an order requiring the physical alteration of the original title document would force Dalton to violate her duties as an auditor, that no statute authorizes auditors to alter the prior documents, that May did not have standing because of Gregory's deleting the covenants when she conveyed the property to the Lakes, and that "[t]he appropriate manner to force an elected officer to act is through a Writ [of Mandamus]." *Id*. at 46-50.

The trial court granted May's motion for summary judgment in part and denied it in part. The trial court held that under RCW 49.60.224 the racially restrictive covenant is void and struck the covenant under RCW 49.60.227. The trial court denied May's "request for an order directing the Spokane County Auditor to eliminate Subsection (c) of the 1953 Declaration of Protective Covenants from the public record or to otherwise alter existing documents." *Id*. at 85. The court found that Alex May was the only necessary party under the statute. *Id*. at 84. Further, that "[t]he plain language of RCW 49.60.227 creates no duty for county auditors to

remove void provisions from the public record or otherwise alter existing records and provides no authority for the Court to order the Spokane County Auditor to take such action." *Id*. The court also ordered that "[a] copy of this order may be filed with the Spokane County Auditor on the property records for the impacted property." *Id*. at 85.

May appealed. In a split opinion, the Court of Appeals, Division Three, affirmed the trial court and held that an order striking a void covenant is self-executing and that "[w]hile the order should be included as part of the official property record, there is no additional need to physically alter existing records." *May v. Spokane County*, 16 Wn. App. 2d 505, 516, 481 P.3d 1098 (2021).

Judge George Fearing vehemently disagreed. He saw the majority's reading of the law to ignore the plain language of the statute and favor archival purposes over destroying a remnant of slavery, racism, and white supremacy. *See generally id*. at 516-36 (Fearing, J., dissenting). May again appealed, and this court granted review.[3] 197 Wn.2d 1016 (2021).

During the 2021 legislative session, between the release of the Court of Appeals opinion in this case and our granting review, the legislature amended RCW

---

[3] The Carl Maxey Center filed an amicus brief in support of May's petition for review. In addition, there are two amicus briefs in this case that support May's view of the law. One is submitted by University of Washington law professors Karen Boxx and Gregory Hicks and the other by the Washington State Association for Justice Foundation.

*In re That Portion of Lots 1 & 2*, No. 99598-2

49.60.227 and explicitly set forth the procedure for this judicial remedy. *See* LAWS OF 2021, ch. 256.

BACKGROUND ON RACIALLY DISCRIMINATORY COVENANTS

Racially restrictive covenants have been the subject of litigation since at least 1892. Michael Jones-Correa, *The Origins and Diffusion of Racial Restrictive Covenants*, 115 POL. SCI. Q. 541, 548 (2000); s*ee Gandolfo v. Hartman*, 49 F. 181 (C.C.S.D. Cal. 1892) (concerning racially restrictive covenant against Chinese immigrants). Beyond that, we know relatively little about their origins and spread. Jones-Correa, *supra*, at 541.

In *Buchanan v. Warley,* 245 U.S. 60, 70-71, 82, 38 S. Ct. 16, 62 L. Ed. 149 (1917), the United States Supreme Court held that a racial zoning ordinance that restricted people of color from moving to a block that did not have a majority of residences occupied by other people of color, and the same racially based restrictions for white people, was unconstitutional. The ordinance interfered with "the right to acquire, use, and dispose of [property]." *Id*. at 74.

"Historians tie the surge in popularity of racially restrictive covenants to the [*Buchanan*] decision that municipally mandated racial zoning was unconstitutional." Nancy H. Welsh, *Racially Restrictive Covenants in the United States: A Call to Action*, 12 AGORA J. OF URB. PLAN. & DESIGN 130, 134 (2018) (citing RICHARD ROTHSTEIN, THE COLOR OF LAW 48 (2017)). At this time of suburban development,

7

"community builders sought more secure means to protect their investment from the 'economic threat' of racial mixing," and racially restrictive covenants were a way of circumventing *Buchanan*. *Id*. (citing ROTHSTEIN, *supra*, at 48).

In 1926, the Supreme Court heard *Corrigan v. Buckley*, 271 U.S. 323, 46 S. Ct. 521, 70 L. Ed. 969 (1926). In that case, a group of white people collectively agreed to record a covenant for their properties that prohibited Black persons from occupying or using the property and prohibited white owners from selling, leasing, or giving the property to Black persons. *Id*. at 327. The Supreme Court ultimately held the covenants were not subject to constitutional regulation as contracts between private individuals and dismissed the case for lack of jurisdiction. *Id*. at 331-32.

In 1948, in *Shelley v. Kraemer*, 334 U.S. 1, 68 S. Ct. 836, 92 L. Ed. 1161 (1948), the Supreme Court held that racially restrictive covenants were *unenforceable*. In doing so, the Court held,

> We conclude, therefore, that the restrictive agreements standing alone cannot be regarded as violative of any rights guaranteed to petitioners by the Fourteenth Amendment [to the United States Constitution]. So long as the purposes of those agreements are effectuated by voluntary adherence to their terms, it would appear clear that there has been no action by the State and the provisions of the Amendment have not been violated.

*Id*. at 13. However, the Court held that this case included seeking enforcement of the covenants and, thus, included state action and, therefore, it did implicate the

8

Fourteenth Amendment. *Id*. at 18-19. Accordingly, the covenants were held to be unenforceable, but not illegal.

"Notwithstanding this landmark decision, racially restrictive covenants continued to proliferate." Welsh, *supra*, at 136. It was not until 1968, under the federal Fair Housing Act of 1968, 42 U.S.C. §§ 3601-3619, that writing these covenants into deeds became illegal. *Id*. But owners and occupants, like May, are frequently left with racist covenants not only in their own title but also throughout the chains of title to their properties.

ANALYSIS

I.  Standard of Review and Background Principles

May contends that this case concerns the refusal to consider a declaratory action and is, therefore, reviewed for abuse of discretion. Br. of Appellant at 4 (Wash. Ct. App. No. 37179-4-III (2020)) ("This court reviews 'a trial court's refusal to consider a declaratory judgment action for abuse of discretion.'" (quoting *Kitsap County v. Smith*, 143 Wn. App. 893, 902, 180 P.3d 834 (2008))).

However, as Spokane County observes, May is appealing from the denial of a summary judgment motion. When reviewing a summary judgment order de novo, "[w]e engage in the same inquiry as the superior court," *Lakehaven Water & Sewer Dist. v. City of Federal Way*, 195 Wn.2d 742, 752, 466 P.3d 213 (2020).

As this case raises the issue of how to interpret RCW 49.60.227, we review questions of statutory interpretation de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "The court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Id*. at 9-10. We discern the plain meaning from "all that the Legislature has said in the statute and related statutes." *Id*. at 11.

II.    The Washington Law Against Discrimination (WLAD)

Chapter 49.60 RCW was enacted as "a broad remedial statute evidencing the Legislature's desire to confront many forms of discrimination." *Bennett v. Hardy*, 113 Wn.2d 912, 927, 784 P.2d 1258 (1990). Known as the WLAD, the legislature enacted the chapter, finding that "discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." RCW 49.60.010. The chapter also created an agency "with powers with respect to elimination and prevention of discrimination . . . in real property transactions because of race . . . ." *Id*. "The provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof." RCW 49.60.020.

III.     RCW 49.60.227 and Its Amendments

In 1969, the legislature enacted RCW 49.60.224 and declared that racially (and otherwise) discriminatory covenants are void. In 1987, the legislature passed what would become the first iteration of RCW 49.60.227. In doing so it wrote,

> The legislature finds that some real property deeds and other written instruments contain discriminatory covenants and restrictions that are contrary to public policy and are void. The continued existence of these covenants and restrictions is repugnant to many property owners and diminishes the free enjoyment of their property. *It is the intent of section 2 of this act to allow property owners to remove all remnants of discrimination from their deeds.*

LAWS OF 1987, ch. 56, § 1 (emphasis added).

> The iteration at issue when May filed suit, former RCW 49.60.227, reads,

> [(1)(a)] If a written instrument contains a provision that is void by reason of RCW 49.60.224, the owner, occupant, or tenant of the property which is subject to the provision or the homeowners' association board may cause the provision to be stricken from the public records by bringing an action in the superior court in the county in which the property is located. The action shall be an in rem, declaratory judgment action whose title shall be the description of the property. The necessary party to the action shall be the owner, occupant, or tenant of the property or any portion thereof. The person bringing the action shall pay a fee set under RCW 36.18.012.

> [(b)] If the court finds that any provisions of the written instrument are void under RCW 49.60.224, *it shall enter an order striking the void provisions from the public records and eliminating the void provisions from the title or lease of the property described in the complaint.*

11

(Emphasis added.) The section labels were added in a later iteration of the statute that did not change the text of these sections and also added an alternative nonjudicial remedy.[4] LAWS OF 2018, ch. 65, § 1.

Applying the rules of statutory construction, the Court of Appeals concluded that "RCW 49.60.227 plainly contemplates that a court order striking a voided provision in a recorded instrument is self-executing; i.e., no action beyond entry of the order is necessary to eliminate the existence of the discriminatory provision." *May*, 16 Wn. App. 2d at 514-15.

In response to the Court of Appeals opinion in this case, the legislature passed Engrossed Second Substitute House Bill 1335, which revised RCW 49.60.227. *See* LAWS OF 2021, ch. 256. In doing so, the legislature writes,

> The legislature finds that the existence of racial, religious, or ethnic-based property restrictions or covenants on a deed or chain of title for real property is like having a monument to racism on that property and is repugnant to the tenets of equality. Furthermore, such restrictions and covenants may cause mental anguish and tarnish a property owner's sense of ownership in the property because the owner feels as though they have participated in a racist act themselves.
>
> It is the intent of the legislature that the owner, occupant, or tenant or homeowners' association board of the property which is subject to an unlawful deed restriction or covenant pursuant to RCW 49.60.224 is entitled to have discriminatory covenants and restrictions that are contrary to public policy struck from their chain of title. The

---

[4] May filed his declaratory action in 2018 while former RCW 49.60.227 (2006) was in effect, but by the time he filed his motion for summary judgment in 2019, former RCW 49.60.227 (2018), adding the section labels, was in effect. The pertinent text did not change between the iterations of the statute.

12

legislature has presented two ways this can be accomplished through RCW 49.60.227(1) (a) and (b). If the owner, occupant, or tenant or homeowners' association board of the property elects to pursue a judicial remedy, the legislature intends that the court issue a declaratory judgment ordering the county auditor, or in charter counties the county official charged with the responsibility for recording instruments in the county records, to entirely strike the racist or otherwise discriminatory covenants from the chain of title. Striking the language does not prevent preservation of the original record, outside of the chain of title, for historical or archival purposes.

The legislature finds that striking racist, religious, and ethnic restrictions or covenants from the chain of title is no different than having an offensive statutory monument which the owner may entirely remove. So too should the owner be able to entirely remove the offensive written monument to racism or other unconstitutional discrimination.

*Id.* § 1. The legislature then sets forth the steps to be taken to remove the covenant from the chain of title. *Id.* § 4.

The act does indicate that "[t]his act applies to real estate transactions entered into on or after January 1, 2022." *Id.* § 5. However, only section 3 of the act concerns real estate transactions. *Id.* § 3. Accordingly, the rest of the act would be effective as of the effective date of July 25, 2021, and the amended statute applies in the present case.

Under the amended statute, when seeking the judicial remedy under RCW 49.60.227(1)(b),

(i) A complete copy of any document affected by the order shall be made an exhibit to the order and the order shall identify each document by recording number and date of recordation and set forth verbatim the void provisions to be struck from such document. The

13

order shall include a certified copy of each document, upon which the court has physically redacted the void provisions.

(ii) The person bringing the action may obtain and deliver a certified copy of the order to the office of the county auditor or, in charter counties, the county official charged with the responsibility for recording instruments in the county records, in the county where the property is located.

(iii) The auditor shall record the documents prepared by the court. An image of each document so corrected shall be placed in the public records. Each corrected document shall contain the following information on the first page or a cover page prepared pursuant to RCW 65.04.047: The auditor's file number or book and page of the original document, a notation that the original document was corrected pursuant to this section, the cause number of the court action, and the date the order was entered.

(iv) The auditor or official shall update the index of each original document referenced in the order with the auditor's file number of the corrected document. Further, the index will note that the original record is no longer the primary official public record and is removed from the chain of title pursuant to the court order.

(v) The original document or image and subsequent records of such actions shall be separately maintained in the county's records and, at the auditor's or official's discretion, the original document or image may also be transferred to the secretary of state archives division to be preserved for historical or archival purposes.

LAWS OF 2021, ch. 256, § 4 (underlining omitted).

We believe that the legislature's intent is clear and that the amendments provide a remedy that strikes the balance between keeping a historical record of racism in covenants, while also allowing homeowners to remove the repugnant covenants from their chains of title. Removing all trace of these discriminatory

covenants would *not* effectuate the legislature's intent to eradicate discrimination. It would destroy only the physical evidence that this discrimination ever existed. It would be all too easy for future generations to look back at these property records with no physical evidence of the discriminatory covenants and conclude that the covenants never existed at all. As the Court of Appeals recognized below,

> A policy of whitewashing public records and erasing historical evidence of racism would be dangerous. It would risk forgetting and ultimately denying the ugly truths of racism and racist housing practices. Such an outcome cannot be squared with the antidiscrimination purposes of Washington's Law Against Discrimination.

*May*, 16 Wn. App. 2d at 515. We must ensure that future generations have access to these documents because, although the covenants are morally repugnant, they are part of a documented history of disenfranchisement of a people. It is our history.

CONCLUSION

We hold that the legislature's amendments to RCW 49.60.227 during the 2021 legislative session apply in the present case. Accordingly, we remand to the trial court for the remedy as set forth in Laws of 2021, chapter 256, section 4, and for further proceedings consistent with this opinion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

_____
Whitener, J.

WE CONCUR.

_____          _____
González, C.J.                                           Stephens, J.

_____          _____
Johnson, J.                                               Gordon McCloud, J.

_____          _____
Madsen, J.                                                Yu, J.

_____          _____
Owens, J.                                                 Montoya-Lewis, J.